## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **DRC, INC.** | ) |
| **Petitioner** | ) ) ) |
| **v.** | ) **CASE NUMBER 1:10-CV-00003-PLF** ) |
| **REPUBLIC OF HONDURAS** | ) ) |
| **Respondent.** | ) ) ) ) |

## RESPONDENT'S MOTION TO STAY ACTION OR, IN THE ALTERNATIVE, DISMISS PETITION

## ORAL ARGUMENT REQUESTED

Pursuant to the Federal Rules of Civil Procedure, Rules 12(b)(1), 12(b)(2) and 12(b)(6), and the inherent powers of this Court, *inter alia*, Respondent Republic of Honduras hereby moves to stay this enforcement action until after the final adjudication of a prior related action brought by the United States government against Petitioner DRC, Inc. ("DRC") and/or after the final adjudication of a prior enforcement action filed by DRC in Honduras and, in the alternative, hereby moves to dismiss the Petition of DRC, on each of the following grounds:

1.      These confirmation proceedings should be stayed until after final adjudication of the following related prior actions:

(a)      <u>United States of America v. DRC, Inc.</u>, United States District Court, District of Columbia, case no. 1:04-cv-01608-RWR.  In that action, the United States seeks a judgment that DRC perpetrated fraud in connection with the subject reconstruction project in Honduras, financed by the United States Agency for International Development ("USAID"), and seeks return of funds paid to DRC.  In these proceedings, DRC seeks payment from the Republic of Honduras for sums claimed as part of that same project, although it was to be financed by

USAID.  The subject arbitration award is based on the same transactions at issue in the United

States' action against DRC.  If the United States prevails against DRC, DRC would be found to

have committed fraud in connection with the transactions which would be grounds to invalidate

the arbitration award.  If this Court were to confirm the award and the United States later prevails

in its action against DRC, it would result in conflicting judgments.  Similarly, DRC has filed two

claims against the United States in the United States Court of Federal Claims, which also have

been stayed until after the conclusion of the United States action against DRC.  Accordingly, the

United States is submitting herein a Statement of Interest also requesting that this Court stay

these proceedings until after final adjudication of the United States action against DRC.

      (b)     The prior action filed by DRC in the Honduras:  <u>DRC, Inc. v. Fondo</u>

<u>Hondureño de Inversión Social</u>, Honduras Supreme Court, case no. 301-2009, currently pending

in Honduras.  The subject arbitration award was against the Fondo Hondureño de Inversión

Social ("FHIS"), the entity that contracted with DRC, and not against the Republic of Honduras.

DRC filed said prior action in Honduras seeking confirmation of the subject award against FHIS,

and FHIS is opposing the recognition and confirmation of the subject arbitration award.  The

Honduras proceedings may be dispositive of the instant proceedings before this Court.

      (c)     <u>DRC, Inc. v. United States</u>, U.S. Court of Federal Claims, case no. 04-

940C.  This case arises out of the Letter of Commitment that USAID provided to DRC in

connection with the subject contract.  DRC seeks to recover the balance due on that contract.

      2.     In the alternative, the instant Petition must be dismissed, based on each of the

following alternative grounds:

      (a)     The Petition must be dismissed because this Court lacks subject matter

jurisdiction under the Foreign Sovereign Immunities Act ("FSIA").  The Republic of Honduras

has sovereign immunity under the FSIA, and none of the FSIA exception to immunity apply, because FHIS is a separate instrumentality of the Republic and must be recognized as such under the FSIA.

(b)     The Petition should be dismissed based on forum non-conveniens grounds. As admitted by the fact that DRC initiated the pending judicial proceedings in Honduras against FHIS, the courts in Honduras are a proper alternative forum, are better equipped to decide issues of Honduras law, and the other relevant factors also weigh heavily in favor of that forum.

(c)     The Petition should be dismissed on comity grounds.  This Court should abstain and defer to the Honduras courts on the issues whether the subject arbitration award is enforceable, particularly given that the Honduras courts are already addressing the matter as requested by DRC.

(d)     The Petition must be dismissed because it presents a non-justiciable political controversy.  At the crux of the Petition is whether the Republic of Honduras must pay when USAID withholds payment under United States law.  That is a political question to be addressed by USAID (as an agency that takes its guidance from the United States Secretary of State) and not by the courts.  There is no clear judicial standard to apply to this political question, and the risk of contradictory statements by different branches of government would be embarrassing.

(e)     The Petition must be dismissed based on lack of personal jurisdiction over the Republic of Honduras.  The Republic had no involvement in these matters, and it did not invoke this forum in any way.

(f)     And, the Petition must be dismissed for failure to name necessary and indispensable party FHIS.  There is no jurisdiction over FHIS, so the Petition must be dismissed..

3.     The Republic of Honduras also requests such further relief as this Court deems to be just and proper.

This motion is based on this motion, and the memorandum in support of the motion, the declarations of Luis Enrique Galeano Milla, Julio Rendon Cano, Juan Jose Urquiza and Juan C. Basombrio, and the proposed order filed herewith, all records in this action, and the arguments of counsel for the Republic of Honduras.

Petitions to confirm an arbitration award are treated as motions.  9 U.S.C. § 6.  Thus, Respondent Republic of Honduras' counsel conferred with Petitioner DRC's counsel regarding this motion.  The Republic of Honduras asked whether DRC would stipulate to bifurcation of this Petition, so that the Republic of Honduras may move to stay or dismiss without also having to oppose the Petition until after the Court ruled on the instant motion.  DRC declined the stipulation.  Thus, herewith the Republic of Honduras has filed a motion to bifurcate and, in an abundance of caution, and in the alternative to the instant motion to stay or dismiss, also a preliminary response and opposition to the Petition in order to avoid any potential default claim, but not as a waiver of any of the objections, defenses or arguments raised herein.

The Republic of Honduras requests oral argument on the instant motion, if the Court deems it necessary.

Respectfully submitted,

Dated:  May 14, 2010

 _/s/ Timothy J. Koeppl_____
Timothy J. Koeppl (D.C. Bar # 983307)
Dorsey & Whitney LLP
1801 K Street, NW, Suite 750
Washington, DC 20006
(202) 442-3510 (telephone)
(202) 442-3199 (facsimile)
koeppl.timothy@dorsey.com

Juan C. Basombrio (Admitted *Pro Hac Vice*)
Dorsey & Whitney LLP
38 Technology Drive, Suite 100
Irvine, California 92618
(949) 932-3650 (telephone)
(949) 932-3601 (facsimile)
basombrio.juan@dorsey.com

Counsel for Respondent
**REPUBLIC OF HONDURAS**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DRC, INC. | ) |
| | ) |
| Petitioner | ) |
| | ) |
| v. | ) CASE NUMBER 1:10-CV-00003-PLF |
| | ) |
| REPUBLIC OF HONDURAS | ) |
| | ) |
| Respondent. | ) |
| | ) |

## MEMORANDUM IN SUPPORT OF RESPONDENT'S MOTION TO STAY AND, IN THE ALTERNATIVE, DISMISS PETITION

Respectfully submitted,

Timothy J. Koeppl (D.C. Bar # 983307)
Dorsey & Whitney LLP
1801 K Street, NW, Suite 750
Washington, DC 20006
(202) 442-3510 (telephone)
(202) 442-3199 (facsimile)
koeppl.timothy@dorsey.com

Juan C. Basombrio (Admitted *Pro Hac Vice*)
Dorsey & Whitney LLP
38 Technology Drive, Suite 100
Irvine, California 92618
(949) 932-3650 (telephone)
(949) 932-3601 (facsimile)
basombrio.juan@dorsey.com

Counsel for Respondent
**REPUBLIC OF HONDURAS**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

I.     INTRODUCTION ........................................................................................................1

II.    FACTUAL BACKGROUND .......................................................................................4

      A.    USAID. ...........................................................................................................4

      B.    FHIS. ..............................................................................................................5

      C.    DRC. ...............................................................................................................5

      D.    CONTRACTS BETWEEN USAID AND DRC, AND DRC AND FHIS. .............5

      E.    THE UNITED STATES GOVERNMENT'S ACTION AGAINST DRC. ............6

      F.    DRC'S CLAIMS AGAINST USAID. ...................................................................7

      G.    THE ARBITRATIONS BETWEEN DRC AND FHIS IN HONDURAS. ............8

      H.    THE HONDURAS CONFIRMATION ACTION BY DRC AGAINST
           FHIS. ..............................................................................................................9

      I.    NO INVOLVEMENT BY THE REPUBLIC OF HONDURAS. ..........................9

III.    ARGUMENT ................................................................................................................10

      A.    THESE PROCEEDINGS SHOULD BE STAYED UNTIL AFTER THE
           FINAL ADJUDICATION OF (1) THE UNITED STATES
           GOVERNMENT'S LAWSUIT AGAINST DRC, (2) THE PENDING
           JUDICIAL PROCEEDINGS IN HONDURAS INITIATED BY DRC
           AGAINST FHIS, AND (3) DRC'S CASE AGAINST USAID. ...........................10

           1.    THE UNITED STATES GOVERNMENT'S ACTION AGAINST
                DRC. .................................................................................................11

           2.    THE HONDURAS CONFIRMATION ACTION BY DRC
                AGAINST FHIS. ..............................................................................12

           3.    THE DRC ACTION AGAINST THE UNITED STATES ......................15

      B.    THIS PETITION MUST BE DISMISSED AS THERE IS NO SUBJECT
           MATTER JURISDICTION UNDER THE FOREIGN SOVEREIGN
           IMMUNITIES ACT ...............................................................................................16

1.      THE REPUBLIC HAS FOREIGN SOVEREIGN IMMUNITY. .............16

2.      NO FSIA EXCEPTION APPLIES TO THE REPUBLIC OF
        HONDURAS. ...........................................................................................17

3.      THE SEPARATENESS OF FHIS MUST BE RESPECTED. ..................18

4.      DRC'S OWN PRIOR ALLEGATIONS AND AFFIDAVITS
        ALSO CONFIRM THE SEPARATENESS OF FHIS AND THE
        LACK OF INVOLVEMENT BY THE REPUBLIC OF
        HONDURAS. ...........................................................................................25

C.   THIS PETITION SHOULD BE STAYED OR DISMISSED UNDER
     PRINCIPLES OF INTERNATIONAL COMITY AND/OR ON
     GROUNDS OF ABSTENTION. ...........................................................................26

D.   THE PETITION SHOULD BE DISMISSED BASED ON THE
     DOCTRINE OF INCONVENIENT FORUM IN FAVOR OF THE
     HONDURAS COURTS.......................................................................................28

E.   THIS PETITION MUST BE DISMISSED BECAUSE IT PRESENTS A
     NON-JUSTICIABLE POLITICAL CONTROVERSY. .......................................31

F.   THE PETITION MUST BE DISMISSED BECAUSE THE COURT
     LACKS PERSONAL JURISDICTION OVER REPUBLIC OF
     HONDURAS. .....................................................................................................35

G.   THE PETITION MUST BE DISMISSED FOR A FAILURE TO JOIN A
     NECESSARY AND INDISPENSABLE PARTY:  FHIS....................................37

IV.   CONCLUSION..............................................................................................................40

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Aktepe v. U.S.
    105 F.3d 1400 (11th Cir.1997) ...............................................................33

Amorrortu v. Rep. of Peru
    570 F.Supp.2d 916 (S.D.Tex. 2008) .......................................................17

Argentine Republic v. Amerada Hess Shipping Corp.
    488 U.S. 428 (1989)................................................................................16

Baker Marine (Nigeria) Ltd. v. Chevron (Nigeria) Ltd.
    191 F.3d 194 (2nd Cir. 1999)...............................................14, 31, 32, 33

Baker v. Carr
    369 U.S. 186 (1962)..........................................................................31, 32

Base Metal Trading Limited v. OJSC Novokuznetsky Aluminum Factory
    283 F.3d 208 (4th Cir. 2002) ..................................................................35

BP Chemicals Ltd. v. Jiangsu SOPO Corp.
    420 F.3d 810 (8th Cir. 2005) ..................................................................36

Cherokee Nation of Oklahoma v. United States
    124 F.3d 1413 (D.C. Cir. 1997) .............................................................10

Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Washington
    699 F.2d 1274 (D.C. Cir. 1983) .............................................................37

Coen v. Coen
    509 F.3d 500 (8th Cir. 2007) ..................................................................35

Compagnie Noga D'Importation et D'Exportation, S.A. v. Russian Federation
    361 F.3d 676 (2nd Cir. 2004) .................................................................24

Corsi v. Eagle Publ., Inc.
    2008 WL 239581 (D.D.C. 2008) ...........................................................37

de Sanchez v. Banco Central de Nicaragua
    770 F.2d 1385 (5th Cir. 1985) ................................................................17

EDF Intern. S.A. v. YPF S.A.
    slip copy, 2008 WL 5045915 at *3-4 (D.Del. 2008) ..............................15

EM Ltd. v. Republic of Argentina
    473 F.3d 463 (2d Cir. 2007)...................................................................19

Energy Transp., LTD. v. M.V. San Sebastian
    348 F. Supp. 2d 186 (S.D.N.Y. 2004)...................................................................13

Europcar Italia S.p.A. v. Maiellano Tours
    156 F.3d 310 (2nd Cir. 1998)...............................................................................14

First National City Bank v. Banco Para El Comercio Exterior de Cuba
    462 U.S. 611 (1983) ("Bancec").........................................................18, 19, 20, 32

Freud v. France
    2008 WL 5272744 at * 21 (S.D.N.Y. 2008).................................................26, 27

Frontera Resources Azerbajan Corp. v. State Oil Co.
    582 F.3d 393 (2nd Cir. 2009)...............................................................................36

Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.
    284 F.3d 1114 (9th Cir. 2002) ..............................................................................35

Hercaire Int'l, Inc. v. Argentina
    821 F.2d 559 (11th Cir. 1987)..............................................................................19

Hisler v. Gallaudet University
    344 F.Supp.2d 29 (D.D.C. 2004) .........................................................................10

In the Matter of Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine
    311 F.3d 488 (2nd Cir. 2002)..........................................................................28, 30

Inc. v. Rep. of Nicaragua
    115 F. Supp. 2d 358 (S.D.N.Y. 2000), aff'd sub nom, LNC Invs., Inc. v. Banco
    Central de Nicaragua, 228 F.3d 423 (2d Cir. 2000)............................................20

Int'l Ins. Co. v. Caja de Ahorro y Seguro
    293 F.3d 392 (7th Cir. 2002) ...............................................................................13

International Shoe v. Washington
    326 U.S. 310 (1945).........................................................................................35, 36

Jota v. Texaco, Inc.
    157 F.3d 156 (2nd Cir. 1998)...............................................................................27

Kato v. Ishihara
    360 F.3d 106 (2d Cir. 2004).................................................................................16

Katzir's Floor & Home Design, Inc. v. M-MLS.com
    394 F.3d 1143 (9th Cir. 2004) .............................................................................20

Kensington Int'l Ltd. v. Republic of Congo
    2007 WL 1032269 (S.D.N.Y. March 30, 2007) ...................................................20

iv

Letelier v. Republic of Chile
  748 F.2d 790 (2d Cir. 1984), cert. denied, 471 U.S. 1125 (1985) ....................................19, 20

Leyva v. Certified Grocers of California, Inc.
  593 F.2d 857 (9th Cir. 1979) .................................................................................................10

Marbury v. Madison
  5 U.S. (1 Cranch) 137 (1803).................................................................................................31

Moore v. United Kingdom
  384 F.3d 1079 (9th Cir. 2004) ...............................................................................................36

Pravin Assocs., Ltd. v. Banco Popular del Peru
  109 F.3d 850 (2nd Cir. 1997)..................................................................................................26

Pravin Banker Associates, Ltd. v. Banco Popular del Peru
  9 F. Supp. 2d 300 (S.D.N.Y. 1998)........................................................................................19

Price v. Socialist People's Lybian Arab Jamahiriya, 294 F.3d 82, 95-100 (D.C. Cir. 2002) ........36

Provident Tradesmen's B&T Co. v. Patterson
  390 U.S. 102 (1968)................................................................................................................38

Saudi Arabia v. Nelson
  507 U.S. 349 (1993)................................................................................................................16

Societe Nationale Industrielle Aerospatiale v. U.S. District Court
  482 U.S. 522 (1987)................................................................................................................26

Spier v. Calzaturificio Tecnica, S.p.A.
  21 F.Supp.2d 279 (S.D.N.Y. 1999)........................................................................................14

Telcordia Tech Inc. v. Telkom S.A. Ltd.
  458 F.3d 172 (3rd Cir. 2006) ..................................................................................................27

TermoRio S.A. E.S.P. v. Electranta S.P.
  487 F.3d 928 (D.C. Cir. 2007)............................................................................................4, 14

Termorio S.A. E.S.P. v. Electroficadora del Atlantico S.A. et al.
  421 F.Supp. 2d 87 (D.D.C. 2006)......................................................................................30, 31

Transaero, Inc. v. La Fuerza Aera Boliviana
  30 F.3d 148 (D.C. Cir. 1994)..................................................................................................24

U.S. v. Curtiss-Wright Export Corp.
  299 U.S. 304 (1936)................................................................................................................31

United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.
  1999 WL 307666 (S.D.N.Y. May 17, 1999), aff'd, 199 F.3d 94 (2d Cir. 1999)....................20

Verlinden B.V. v. Central Bank of Nigeria
      461 U.S. 480 (1983)..........................................................................................16

Vieth v. Jubelirer
      541 U.S. 267 (2004) (plurality opinion) ..............................................................32

World Wide Minerals, Inc. v. Republic of Kazakhstan
      296 F.3d 1154 (D.C. Cir. 2002)..........................................................................17

Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.
      126 F.3d 15 (2nd Cir. 1997)................................................................................14

## FEDERAL STATUTES AND RULES

9 U.S.C. § 305....................................................................................................13

Foreign Sovereign Immunities Act, 28 U.S.C. 1602, et seq. ("FSIA").................................. passim

Federal Rules of Civil Procedure, Rule 19 ............................................................37, 38

Federal Rules of Civil Procedure, Rule 12 ..................................................................9

## OTHER AUTHORITIES

Leonard V. Quigley, Accession by the U.S. to the Convention on the Recognition and
      Enforcement of Foreign Arbitral Awards, 70 Yale L.J. 1049, 1069 (1961) (Article
      V(1)(e)................................................................................................................14

Leonard V. Quigley, Accession by the United States to the Convention on the
      Recognition and Enforcement of Foreign Arbitral Awards, 70 Yale L.J. 1049, 1069
      (1961)................................................................................................................14

I.      <u>INTRODUCTION</u>

Respondent Republic of Honduras moves to stay these proceedings or, in the alternative,

dismiss the instant Petition to confirm the subject arbitration award.

Following tremendous devastation by Hurricane Mitch in Central America in 1998, the

United States Agency for International Development ("USAID") funded reconstruction efforts in

various Central American countries, including in Honduras.  As is its common practice, USAID

issued a Letter of Commitment to Petitioner DRC, Inc. ("DRC"), in which USAID committed to

pay for the reconstruction work through grants payable directly to DRC.  DRC also entered into

a contract with an instrumentality of the government of Honduras, the Fondo Hondureño de

Inversión Social ("FHIS"), for the construction work.  In other words, DRC was selected as the

contractor, and USAID committed to fund the work.  The contract between FHIS and DRC also

expressly provides that the work would be funded by USAID, and USAID would pay DRC.

In or about 2004, the United States government determined that DRC had engaged in

fraud in connection with the procurement and/or execution of the subject contract.  The United

States filed suit, on behalf of USAID and under the False Claims Act, against DRC, and the case

is pending before this Court:  <u>United States of America v. DRC, Inc.</u>, U.S. District Court, District

of Columbia, case no. 1:04-cv-01608-RWR.  In 2004, DRC also filed two lawsuits against the

United States for moneys allegedly unpaid by USAID before the United States Court of Federal

Claims, and both of those lawsuits have been stayed until conclusion of the action by the United

States government against DRC.

In 2007-2009, and under suspicious circumstances, DRC brought actually two arbitration

proceedings against FHIS in Honduras, which were tainted by procedural irregularities (one was

stopped only days before the award was to be rendered and then the second one was stared at

another forum), and in 2009 the second arbitration resulted in the subject arbitration award.  The

arbitration award contradicts the language of the subject contract, and is contrary to applicable Honduras law.  In late 2009, DRC initiated an action in Honduras courts to recognize and enforce the arbitration award against FHIS.  In that judicial proceeding, FHIS is contending that the subject arbitration award should not be enforced based on various grounds, including based on procedural irregularities, as being in contravention of Honduras law, and pursuant to various provisions of the applicable international arbitration treaty.  That case is pending in Honduras.

Now, DRC has filed this Petition before this Court, in order to attempt to enforce the same arbitration award that is the subject of the pending Honduras judicial proceedings against the Republic of Honduras.  The Republic of Honduras, the sole respondent here, was not a party to the underlying agreements, was not involved in the execution of the agreements, was not a party to the subject arbitration proceedings in Honduras or named in the arbitration award, and is not a party to the Honduras judicial confirmation proceedings filed by DRC, yet DRC now seeks to enforce the award solely against it here.  The Republic of Honduras submits that this action is an attempt by DRC to gain leverage in its dispute with the United States by improperly injecting a foreign sovereign into the mix, which clearly had no responsibility to pay for the subject work.

Accordingly, the Republic of Honduras moves to stay and/or dismiss these proceedings.

These proceedings should be stayed until after the United States government's action against DRC, DRC's claim against USAID based on the subject contract, and the Honduras judicial proceedings are finally adjudicated.  The arbitration award is based on the same transactions and contract that are the subject of the United States' action against DRC.  If the United States prevails, DRC would be held to have committed fraud in connection with the underlying transaction and contract which would be grounds to invalidate the award.  Just as DRC's lawsuit against the United States for non-payment of USAID funds has been stayed

pending resolution of the United States' lawsuit against DRC, these proceedings also should be stayed pending the resolution of the United States' lawsuit against DRC.  Stay also is necessary until the conclusion of DRC's lawsuit against USAID to avoid a double recovery. Finally, these proceedings also should be stayed until after conclusion of the Honduras judicial proceeding filed by DRC.  The Honduras proceedings are prior in time and will adjudicate whether the arbitration award is enforceable against FHIS.  Here, DRC has failed to name FHIS as a party (although FHIS is the only party against which the award was rendered).  There is a great danger of inconsistent judgments if this Court were to enforce the award against the Republic, and then this Court were to hold that DRC defrauded USAID and that the underlying agreement is void, and/or the Honduras courts were to hold that the award is unenforceable.  A stay is necessary.

In the alternative, the Petition must or should be dismissed on various grounds.

First, the Petition must be dismissed because this Court lacks subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA").  The Republic of Honduras has sovereign immunity under the FSIA, and none of the FSIA exceptions to immunity apply, because FHIS is a separate instrumentality of the Republic and must be recognized as such under the FSIA.

Second, the Petition should be dismissed based on forum non-conveniens grounds.  As admitted by the fact that DRC initiated the pending judicial proceedings in Honduras against FHIS, the courts in Honduras are a proper alternative forum, are better equipped to decide issues of Honduras law, and the other relevant factors also weigh heavily in favor of that forum.

Third, the Petition should be dismissed on comity grounds.  This Court should abstain and defer to the Honduras courts on the issues whether the subject arbitration award is enforceable, particularly given that the Honduras courts are already addressing the matter as requested by DRC.

Fourth, the Petition must be dismissed because it presents a non-justiciable political controversy.  At the crux of the Petition is whether the Republic of Honduras must pay when USAID withholds payment under United States law.  That is a political question to be addressed by USAID (as an agency that takes its guidance from the United States Secretary of State) and not by the courts.  There is no clear judicial standard to apply to this political question, and the risk of contradictory statements by different branches of government would be embarrassing.

Fifth, the Petition must be dismissed based on lack of personal jurisdiction over the Republic of Honduras.  The Republic had no involvement in these matters, and it did not invoke this forum in any way.

And, sixth, the Petition also must be dismissed for failure to name necessary and indispensable party FHIS.  There is no jurisdiction over FHIS, so the Petition must be dismissed.

Accordingly, the Republic of Honduras moves to stay this action or dismiss the Petition.

## II.    FACTUAL BACKGROUND[1]

A.    <u>USAID.</u>

The United States Agency for International Development ("USAID") offers foreign assistance for the dual purposes of furthering America's foreign policy interests and improving the lives of the citizens of the developing world.  Since the enactment of the Foreign Assistance Act in 1961, USAID has been the principal United States agency extending assistance, through grants, etc., to developing countries recovering from disasters, trying to escape poverty and engaging in democratic reform.  USAID receives policy guidance from the United States Secretary of State, and plays a vital role in advancing United States foreign policy.  Declaration of Juan Basombrio ("Basombrio Decl.") at Exhibits 32 and 33.

---

[1]    A court may consider facts outside the petition on motion to dismiss a confirmation action.  E.g. TermoRio S.A. E.S.P. v. Electranta S.P., 487 F.3d 928, 939-41 (D.C. Cir. 2007).

B.      FHIS.

The Fondo Hondureño de Inversión Social (the name translates to Honduras Fund for Social Investment) ("FHIS") is an instrumentality of the Republic of Honduras.  As discussed in the declarations of Juan José Urquiza (FHIS's witness) and Julio Rendón Cano (expert on Honduras law) submitted by the Republic, FHIS was created in 1990 by the Honduras National Congress as a separate legal entity with administrative, technical and financial autonomy.  FHIS has been granted capacity to contract, sue and be sued, and is engaged in commercial activities such as contracting for the subject reconstruction work in Honduras.  The Republic of Honduras does not control the business activities of FHIS, which operates as an independent governmental instrumentality.  As discussed below, the Republic of Honduras also did not exert control over FHIS is connection with the transactions and events that are the subject of these proceedings.

C.      DRC.

Petitioner DRC, Inc. ("DRC") is a South Carolina corporation with its principal place of business in Alabama.  Petition at ¶ 1.  DRC appears to be engaged in a variety of disaster relief, reconstruction and construction efforts around the world.  See Basombrio Decl. at Exhibit 36.

D.      CONTRACTS BETWEEN USAID AND DRC, AND DRC AND FHIS.

Following the aforementioned devastation by Hurricane Mitch in Honduras in 1998, USAID funded reconstruction efforts in Honduras.

As is its common practice, USAID issued a Letter of Commitment, dated December 5, 2000, to Petitioner DRC, Inc. ("DRC").  The Letter states that USAID has committed to pay for the construction work performed under the anticipated contract between DRC and FHIS, and that payments will be made by USAID directly to DRC after USAID reviews and approves DRC's payment requests for compliance with the contract and Letter.  Basombrio Decl. at Exhibit 19.

Thereafter, on June 21, 2000, DRC entered into a Construction Contract with FHIS, for the subject construction work.  The Spanish version of the contract is attached as Exhibit A to the Petition, and a translation to English is attached as Exhibit B to Affidavit of Murray Paul Farmer, submitted by DRC in support of the Petition.  The Construction Contract also contains additional Mandatory Clauses, required by USAID, attached as Exhibit C to the Farmer Affidavit.

The provisions of the Construction Contract clearly demonstrate that USAID was to fund the project.  Page 1 of the Construction Contract states that "it will be financed with USAID funds."  The third clause of the Construction Contract states that the amount of the contract is $17,667,966.96, which is the exact amount committed in the USAID Letter of Commitment. The twelfth clause of the Contract provides that "USAID will make payments directly to the Contractor."  The twenty fifth clause also indicates that, although USAID is not a party to the Construction Contract, "[t]his contract will be financed with USAID funds, which reserves the right to approve the terms of this contract."  See Exhibit B to Farmer Affidavit.  Similarly, the Mandatory Clauses of the Construction Contract, at ¶13 (A)(1) "(PAYMENT)", expressly provide:  "Payments under the Contract shall be made in lempiras financed with funds made available by USAID."  Id. at Exhibit C.  The Construction Contract between FHIS and DRC, then, expressly provides that the work would be funded solely by the USAID grant.

The Construction Contract has no reference whatsoever to the Republic of Honduras.

E.      THE UNITED STATES GOVERNMENT'S ACTION AGAINST DRC.

In late 2004, the United States government brought suit against DRC, in United States of America v. DRC, Inc., U.S. District Court, District of Columbia, case no. 1:04-cv-01608-RWR (hereafter, the "United States Government Action"), which case is currently pending before this Court.  Basombrio Decl. at Exhibits 1-18.  (A notice of related case has been filed herein).

Then United States brings the action on behalf of USAID and against DRC under the False Claims Act, alleging that DRC committed fraud in connection with the subject project for reconstruction work in Honduras, and in particular in connection with the procurement and performance of the Construction Contract between DRC and FHIS, which was the basis of the subject arbitration award.  See generally, Basombrio Decl. at Exhibit 12 (amended complaint).

DRC moved to dismiss the United States Government Action and the motion was denied. Basombrio Decl. at Exhibits 2-10.  The case is currently in the discovery stage.

F.      DRC'S CLAIMS AGAINST USAID.

DRC, Inc. v. United States, U.S. Court of Federal Claims, case no. 04-940C (hereafter, the "First DRC Court of Claims Action").  This case arises out of the Letter of Commitment that USAID provided to DRC in connection with the Construction Contract.  DRC seeks to recover the balance due on that Contract.  Basombrio Decl. at Exhibits 20-25.  The Court stayed this action, upon the motion of the United States opposed by DRC, until after the conclusion of the United States Government Action.  Id. at Exhibit 25.  The Court held that "[a] stay in these cases is necessary because the dispositive issue of fraud is already being litigated in the District Court for the District of Columbia ...  The issue of fraud is relevant to the LOC [Letter of Commitment] from USAID because a finding that DRC acted fraudulently in obtaining the Honduran contracts would have a dispositive effect on DRC's LOC-based claims in this court."  Id.

DRC, Inc. v. United States, U.S. Court of Federal Claims, case no. 04-1124C ("Second DRC Court of Claims Action").  This case relates to an assignment to USAID of a different contract between DRC and FHIS, and also has been stayed.  Basombrio Decl. at Exhibits 26-31.

G.     THE ARBITRATIONS BETWEEN DRC AND FHIS IN HONDURAS.

The arbitration (actually, the two arbitrations) between DRC and FHIS in Honduras was plagued by procedural irregularities, went forward in violation of Honduras law, and resulted in an award contrary to Honduras law for various reasons.  These issues are being addressed in the Republic of Honduras's Preliminary Response to the Petition, filed concurrently herewith.

For example, in 2007, DRC initiated arbitration in Honduras against FHIS before the Chamber of Commerce.  In late January, 2009, when the panel was ready to render its award, DRC and FHIS requested and the panel entered an order terminating the arbitration without an award.  Declaration of Engineer Juan José Urquiza (FHIS witness) ("Urquiza Decl.") at ¶ 11 and Exhibits 1 & 2.  Shortly thereafter, DRC filed a second arbitration in a new forum in Honduras, the Colegio de Abogados, resulting in the Arbitration Award despite the blatant forum shopping. Id.  Further, although when FHIS and DRC executed the Construction Contract Honduras law required resolution of such disputes in the Honduras courts, the second panel rendered a millionaire Award.  Declaration of Julio Rendón Cano (legal expert) ("Rendón Cano Decl.") at ¶¶ 23-26.  The Award also is contrary to Honduras law in a number of respects.  Most notably, the arbitrators erred in holding that FHIS was obligated to pay DRC.  As noted above, the Letter of Commitment (which may have been concealed from the arbitrators by DRC) and the subject Construction Contract establish that USAID was obligated to pay DRC, not FHIS.  Incredibly, the arbitrators also awarded DRC damages even for its costs in defending against the United States' investigation and action related to DRC's allegedly fraudulent conduct.  There is also a question whether DRC committed fraud during the arbitration process.  For example, in the Honduras arbitration, DRC claimed that "FHIS is the only party against whom DRC can make a claim for lack of payment."  Basombrio Decl. at Exhibit 37 (p. 2).  However, as discussed above,

DRC had brought prior pending claims against the United States seeking payments it claimed were owed by USAID for the subject project.  DRC also may have withheld other information. As a result, the arbitrators were wrongly induced to reach the unsupportable conclusion that FHIS was obligated to pay despite the record evidence that USAID was to fund the project.

H.      THE HONDURAS CONFIRMATION ACTION BY DRC AGAINST FHIS.

On November 11, 2009, DRC filed an action in the Honduras courts against FHIS seeking recognition and enforcement of the Arbitration Award.  Urquiza Decl. at ¶ 13 and Exhibit 3.  On February 19, 2010, FHIS filed an opposition, requesting that the Court refuse to recognize and enforce the Award.  Id. at ¶ 13 and Exhibit 4.  FHIS argues that the Arbitration Award should not be recognized or enforced because there were procedural irregularities in the arbitral process, the matter was referred to arbitration although Honduras law prohibited it when the Construction Contract was executed, the Arbitration Award is contrary to Honduras law, and also should not be recognized under the applicable treaty.  The case is pending in Honduras.  Id.

I.      NO INVOLVEMENT BY THE REPUBLIC OF HONDURAS.

The Republic of Honduras was not involved in the negotiation or execution of the Construction Contract between DRC and FHIS.  The Republic of Honduras  did not control the day-to-day operations of FHIS.  The Republic of Honduras was not named as a respondent to the arbitration proceedings initiated by DRC in Honduras against FHIS, and did not participate in or control said arbitration proceedings.  The Arbitration Award is solely against FHIS, and not against the Republic of Honduras.  DRC has initiated a recognition and enforcement action in the Honduras courts against FHIS, but has not named the Republic of Honduras in that proceeding, which is pending.  The Republic of Honduras also has not participated in that confirmation proceeding.  Declaration of Luis Enrique Galeano Milla ("Galeano Milla Decl.") at ¶ 4.

III.     ARGUMENT

Accordingly, pursuant to the Federal Rules of Civil Procedure, Rules 12(b)(1), (2) and (6) and the Court's inherent powers, the Republic of Honduras moves to stay these proceedings until after the final adjudication of the United States government's lawsuit against DRC, the Honduras judicial confirmation proceedings and the DRC claims against USAID or, in the alternative, moves to dismiss the instant Petition, for the various reasons discussed below.

A.     THESE PROCEEDINGS SHOULD BE STAYED UNTIL AFTER THE FINAL ADJUDICATION OF (1) THE UNITED STATES GOVERNMENT'S LAWSUIT AGAINST DRC, (2) THE PENDING JUDICIAL PROCEEDINGS IN HONDURAS INITIATED BY DRC AGAINST FHIS, AND (3) DRC'S CASE AGAINST USAID.

These proceedings clearly should be stayed.

"The power of a federal district court to stay its proceedings … is beyond question.  This power springs from the inherent authority of every court to control the disposition of its cases." Cherokee Nation of Oklahoma v. United States, 124 F.3d 1413, 1416 (D.C. Cir. 1997).

"The trial court has broad discretion to stay all proceedings in an action pending resolution of independent proceedings elsewhere."  Hisler v. Gallaudet University, 344 F.Supp.2d 29, 35 (D.D.C. 2004).  Indeed, "a trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case."  Id. (citing Leyva v. Certified Grocers of California, Inc., 593 F.2d 857, 863-864 (9th Cir. 1979)).

These proceedings should be stayed until after final adjudication of the United States Government Action against DRC, the Honduras judicial proceedings, and DRC's claim against USAID, in order to foster judicial economy, avoid duplication of effort, promote judicial and the parties' efficiency and justice, and prevent inconsistent judgments, which may be embarrassing to the United States' relations with Honduras.

1.      THE UNITED STATES GOVERNMENT'S ACTION AGAINST DRC.

There can be no dispute that these judicial proceedings and the United States Government Action are related actions, involving the same agreements and events.

In the United States Government Action, the United States has sued DRC, seeking to invalidate USAID's underlying payment obligations to DRC, seeking a refund of sums paid by USAID to DRC, and establishing that no further monies are owed by USAID to DRC, based on the alleged fraud committed by DRC.  The subject Arbitration Award is based on the very same transactions and contract (the June 21, 200 Construction Contract between DRC and FHIS) that are the subject of the United States government's action against DRC.  See Basombrio Decl. at Exhibit 12 (amended complaint), generally and at ¶¶ 9-13.  In addition to asserting fraud in the procurement of the June 21, 2000 contract, which would render it void in its entirety, the United States' complaint asserts that DRC presented false invoices.  Id. at ¶¶ 24-34.

This District Court has already held that the United States has stated a claim against DRC.  DRC moved to dismiss the United States Government Action and the motion was denied.  Basombrio Decl. at Exhibits 2-10.  "[I]f DRC procured the contract award by fraud, the government may be entitled to the return of the entire $12.7 million it paid."  Id. at Exhibit 7 (order denying motion to dismiss at p. 6).

The joint Rule 16.3 report submitted by the United States and DRC in the United States Government Action also confirms that the United States Government Action and this proceeding relate to the same transactions.  In the report, DRC confirms that the case deals with the subject "construction contract" that DRC entered with FHIS for "$17,677,966.96."  DRC also admits that the "United States Agency for International Development ('USAID') financed the Projects but was not a party to the Contract."  Basombrio Decl. at Exhibit 11 (pp. 2-3).

In the United States Government Action, DRC also has filed an amended answer citing the Arbitration Award as a defense.  Basombrio Decl. at Exhibit 18 (p. 3).  The issue of the effect of the Arbitration Award on USAID's payment obligations also is now at issue in that case.

This District's findings, in the United States Government Action regarding whether DRC engaged in fraud, whether the underlying contract was valid, whether USAID is obligated to make payments, and regarding the validity of DRC's invoices will directly impact the validity of the Arbitration Award that is the subject of this Petition.  Accordingly, this Court should stay this action pending the final adjudication of the United States' previously filed action in this District.

Just as DRC's two lawsuits against the United States for non-payment of USAID funds have been stayed pending resolution of the United States Government Action, these proceedings also should be stayed  pending the resolution of the United States Government Action.

It would not only result in inconsistent judgments, but it also would be embarrassing, if this Court confirmed the Arbitration Award against the Republic of Honduras, and this Court later held that DRC is not entitled to recover payments from USAID because DRC engaged in fraud.  The risk of inconsistent judgment can only be avoided by staying these proceedings.

These proceedings should be stayed until after the final adjudication of the United States Government Action against DRC.

     2.     <u>THE HONDURAS CONFIRMATION ACTION BY DRC AGAINST FHIS.</u>

Prior to the filing of the instant Petition, DRC filed a confirmation action in the Honduras courts on November 11, 2009, against only FHIS and seeking recognition and enforcement of the subject Arbitration Award.  Urquiza Decl. at ¶ 13 and Exhibit 3.  On February 19, 2010, FHIS filed an opposition in that action, requesting that the Honduras courts refuse to recognize and enforce the Arbitration Award, and arguing that the Award should not be recognized or enforced

because there were procedural irregularities in the arbitration process, the matter was referred to arbitration although Honduras law prohibited it when the subject contract was executed, the Award is contrary to Honduras law, and the Award should not be recognized under the applicable international arbitration treaty.  The confirmation action filed by DRC is pending in Honduras.  Id. at ¶ 13 and Exhibit 4.

These proceedings also should be stayed until after the final adjudication of the pending confirmation proceedings in Honduras.  The issues in the Honduras proceedings are duplicative of issues here, including precisely whether there were procedural irregularities in the arbitration process, whether the matter was referred to arbitration in violation of Honduras law, where the Award is contrary to Honduras law, and whether the Award should not be recognized under the applicable treaty.  (See generally, Republic of Honduras' Preliminary Response to the Petition.)

That this Petition is brought against the Republic of Honduras only, while the Honduras confirmation proceedings are brought only against FHIS, is irrelevant for purposes of a stay because DRC seeks to hold the Republic of Honduras liable only on the basis that FHIS was its instrumentality or agent.  Petition at ¶6.  If the Honduras courts hold that FHIS is not obligated to pay the Arbitration Award, then this Court could not hold that the Republic is liable to pay the Arbitration Award as the alleged principal of FHIS.  There is no doubt that the Honduras courts are the appropriate forum to determine the validity of the Award under the applicable treaty.[2]

---

[2]     The enforcement of international arbitral awards is under the Panama Convention (Inter-American Convention on International Commercial Arbitration, January 30, 1975, 1438 U.N.T.S. 245, 14 I.L.M. 336) or New York Convention (Convention on Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38).  "Unless otherwise expressly agreed … if a majority of the parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to the Panama Convention and are members of the Organization of American States (OAS), the Panama Convention shall apply."  FAA, 9 U.S.C. § 305 (emphasis added); Int'l Ins. Co. v. Caja de Ahorro y Seguro, 293 F.3d 392, 396 n. 9 (7th Cir. 2002) ("where countries have signed both the New York Convention and the

Honduras is where the Arbitration Award was rendered, and it was rendered under Honduras law.  Thus, the courts of Honduras (as a State of "primary jurisdiction" under either Convention) have the authority to set aside or modify the Award in accordance with the domestic law of Honduras.  "The Convention specifically contemplates that the state in which, or under the law of which, the award is made, will be free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief." Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 23 (2nd Cir. 1997); Leonard V. Quigley, Accession by the United States to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 70 Yale L.J. 1049, 1069 (1961) (Article V(1)(e) "provides that when an award is rendered in one state under the law of a second state, the courts of that second state may set aside or suspend the award.") (emphasis added).

If the Honduras courts find that the Arbitration Award should not be recognized or enforced, that finding should be respected by this Court.  See e.g., Baker Marine (Nigeria) Ltd. v. Chevron (Nigeria) Ltd., 191 F.3d 194, 196-197 (2nd Cir. 1999) (under Article V(1)(e) of the New York Convention, the district court properly declined to enforce an arbitral award because it had been set aside by a competent authority of another country.); Termorio S.A. S.p.A. v. Electranta S.P., 487 F.3d 928, 941 (D.C. Cir. 2007) (declining to enforce arbitration award after a Colombian court held that arbitration was not conducted in accordance with Colombian law.); Spier v. Calzaturificio Tecnica, S.p.A., 21 F.Supp.2d 279, 281-282 (S.D.N.Y. 1999) (declining to

---

Panama Convention, the Panama Convention will apply if a majority of the parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to the [Panama Convention and are member States of the [OAS].").  Panama Convention applies since the U.S. and Honduras are OAS Member States.  See http://www.oas.org/en/member_states/default.asp. Nonetheless, both Conventions have similar provisions and thus the case law is interchangeable. See Energy Transp., LTD. v. M.V. San Sebastian, 348 F. Supp. 2d 186, 198 (S.D.N.Y. 2004) (the Conventions' "key provisions adopt the same standards" and general uniformity of results.")

enforce arbitration award after Italian courts held that the arbitral body exceeded its powers.)

Under the Conventions, "a district court may be acting improvidently by enforcing an award prior to the completion of the foreign proceedings" where a parallel action to set aside or modify an award is proceeding in a country of primary jurisdiction, like the prior Honduras action in the case at bar. Europcar Italia S.p.A. v. Maiellano Tours, 156 F.3d 310, 317 (2nd Cir. 1998) (district court may be acting improvidently by enforcing award prior to completion of a parallel foreign proceeding.). While the Honduras confirmation action is pending, the prudent course of action is to stay these proceedings or dismiss this Petition. See EDF Intern. S.A. v. YPF S.A., 2008 WL 5045915 at *3-4, (D.Del. 2008) (declined to enforce arbitration award and dismissed rather than stayed petition pending resolution of annulment proceeding in Argentina.)

3.     THE DRC ACTION AGAINST THE UNITED STATES.

This action should also be stayed until the final adjudication of DRC, Inc. v. United States, U.S. Court of Federal Claims, case no. 04-940C (hereafter, the "First DRC Court of Claims Action"). As noted above, that case arises out of the Letter of Commitment that USAID provided to DRC in connection with the subject Construction Contract. DRC seeks to recover the balance due on that Contract. Basombrio Decl. at Exhibits 20-25. Because that case seeks damages that are duplicative of the amounts sought by way of this Petition from the Republic of Honduras, allowing DRC to proceed with this Petition while duplicative claims are pending risks inconsistent determinations, as well as, the possibility of an improper double recovery for DRC.

In summary, there is a great danger of inconsistent and/or duplicative judgments if this Court were to enforce the Arbitration Award against the Republic of Honduras, and then this Court held that DRC defrauded USAID and that the underlying contract is void, DRC failed in its claim against USAID and the Court of Claims held that USAID was justified in refusing

payment to DRC, and/or the Honduras courts held that the Award is unenforceable under the Conventions.  Thus, the stay of these proceedings or dismissal of the Petition without prejudice is necessary, until after the final adjudication of the United States, DRC and Honduras actions.

B.     THIS PETITION MUST BE DISMISSED AS THERE IS NO SUBJECT MATTER JURISDICTION UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT.

In the alternative, the Petition must be dismissed because this Court lacks subject matter jurisdiction over these proceedings under the Foreign Sovereign Immunities Act, 28 U.S.C. 1602, et seq. ("FSIA").

The Republic of Honduras has sovereign immunity under the FSIA, and no FSIA exception to immunity applies, because FHIS is a separate instrumentality of the Republic of Honduras and must be recognized as such under the FSIA.  Therefore, the Republic of Honduras has not waived its foreign sovereign immunity.

1.     THE REPUBLIC HAS FOREIGN SOVEREIGN IMMUNITY.

The Foreign Sovereign Immunities Act, 28 U.S.C. 1602, et seq. ("FSIA") "contains a comprehensive set of legal standards governing claims of immunity in every civil action against a foreign state or its political subdivisions, agencies or instrumentalities."  Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 488 (1983).  The FSIA is the "sole basis for obtaining jurisdiction over a foreign state" in United States courts.  Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 433 (1989).  The FSIA applies "in every action against a foreign sovereign, since subject matter jurisdiction in any action depends on the existence of one of [its] specified exceptions."  Id., 488 U.S. at 434;.  28 U.S.C. §§ 1604-05; Saudi Arabia v. Nelson, 507 U.S. 349, 356 (1993) (a foreign state is immune from suit unless an FSIA exceptions applies); Kato v. Ishihara, 360 F.3d 106, 107-08 (2d Cir. 2004) (FSIA codified the restrictive theory of sovereign immunity under which states enjoy immunity subject to limited statutory exceptions).

It is undisputable that the Republic of Honduras is a sovereign state (see Galeano Milla Decl. at ¶ 2), and thus it enjoys foreign sovereign immunity from suit in these proceedings unless one of the specified FSIA exceptions apply, and none applies.

2.      <u>NO FSIA EXCEPTION APPLIES TO THE REPUBLIC OF HONDURAS.</u>

None of the FSIA exceptions to immunity apply to the Republic of Honduras.

First, the arbitration exception (§ 1605(a)(6)) is inapplicable to the Republic of Honduras because it did not sign the Construction Contract between DRC and FHIS with the arbitration clause, the arbitration was not against the Republic, and the Award is not against the Republic.

Second, the waiver exception (§ 1605 (a)(1)) does not apply because the Republic of Honduras has not waived its immunity from litigation in the United States.  Rather, the Republic of Honduras has asserted its sovereign immunity in this proceeding in its initial appearance, as well as through this motion.  <u>Amorrortu v. Rep. of Peru</u>, 570 F.Supp.2d 916, 921 (S.D.Tex. 2008) (foreign sovereign had not waived sovereign immunity, because "it has explicitly objected to the court's jurisdiction in every filing it has made to date.").

Further, "<u>explicit waivers</u> of sovereign immunity are <u>narrowly construed</u> <u>in favor of the sovereign</u> and are <u>not enlarged beyond what the language requires</u>."  <u>World Wide Minerals, Inc. v. Republic of Kazakhstan</u>, 296 F.3d 1154, 1162 (D.C. Cir. 2002) (emphasis added).  Therefore, even if FHIS's execution of an arbitration clause in the Construction Contract could be viewed as a waiver of its sovereign immunity (if it had been sued here which it has not been), the Republic of Honduras did not execute that agreement and, thus, it did not waive its sovereign immunity.

Third, the other FSIA exceptions also do not apply.  The commercial activities exception (28. U.S.C. § 1605(a)(2)) does not apply because there was no commercial activity in the United States between the Republic and DRC, or outside of the United States between DRC and the

17

Republic that had a nexus to the United States.  de Sanchez v. Banco Central de Nicaragua, 770 F.2d 1385, 1391 (5th Cir. 1985).  The dealings were with FHIS.  And, the expropriation exception (§ 1605(a)(3)) does not apply because there was no expropriation by the Republic.

>3.      THE SEPARATENESS OF FHIS MUST BE RESPECTED.

The separateness between FHIS and the Republic of Honduras must be respected under applicable FSIA case law.  Thus, FHIS's execution of the Construction Contract which DRC which contained an arbitration clause did not bring the Republic of Honduras within the FSIA arbitration exception or otherwise waive the sovereign immunity of the Republic of Honduras.

DRC seeks to hold the Republic of Honduras liable on the basis that FHIS was its "instrumentality or agent."  Petition at ¶6.  However, DRC's Petition is utterly devoid of any factual allegations as to why the Republic should be liable for purported obligations of FHIS under the Arbitration Award.  DRC only offers a conclusory cited assertion in paragraph 6.

DRC completely misconstrues the FSIA analysis.  If FHIS is an "instrumentality" of the Republic under the FSIA, then its separateness must be respected.  Only if FHIS was treated as an alter ego or the like of the Republic, would the separateness not be upheld.  FHIS's Petition and memorandum are completely devoid of any evidence to support such a conclusion, and on those grounds alone this Petition should be dismissed.  Further, and to the contrary, the record and evidence presented by the Republic supports the conclusion that FHIS is an instrumentality of the Republic and its separateness from the Republic must be upheld.

The FSIA defines an "agency or instrumentality of a foreign state" as any entity:

(l) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b).

The United States Supreme Court in <u>First National City Bank v. Banco Para El Comercio Exterior de Cuba</u>, 462 U.S. 611, 624 (1983) ("<u>Bancec</u>") outlined what it considered to be the features of a typical government instrumentality:

> . . . governments throughout the world have established separately constituted legal entities to perform a variety of tasks. The organization and control of these entities vary considerably, but many possess a number of common features. A typical government instrumentality, if one can be said to exist, is created by an enabling statute that prescribes the powers and duties of the instrumentality, and specifies that it is to be managed by a board selected by the government in a manner consistent with the enabling law. The instrumentality is typically established as a separate juridical entity, with the powers to hold and sell property and to sue and be sued. Except for appropriations to provide capital or to cover losses, the instrumentality is primarily responsible for its own finances. The instrumentality is run as a distinct economic enterprise; often it is not subject to the same budgetary and personnel requirements with which government agencies must comply.

> <u>See</u> <u>also</u> <u>EM Ltd. v. Republic of Argentina</u>, 473 F.3d 463, 479 n.15 (2d Cir. 2007)

(applying <u>Bancec</u> presumption of separateness in case involving the central banking authority).

Instrumentalities of foreign states are to be "accorded a presumption of independent status" from their sovereign governments. <u>Bancec</u>, 462 U.S. at 626-27. An instrumentality is normally treated as distinct and independent from its sovereign and "the instrumentality's assets and liabilities must be treated as distinct from those of its sovereign." <u>Id.</u> at 625-27.

The vitality and importance of the presumption of separateness set forth in <u>Bancec</u> has been recognized time and again. <u>E.g.</u>, <u>Letelier v. Republic of Chile</u>, 748 F.2d 790, 795 (2d Cir. 1984) ("As both <u>Bancec</u> and the FSIA legislative history caution against too easily overcoming the presumption of separateness, we decline. . . to do so in this case."), <u>cert. denied</u>, 471 U.S. 1125 (1985); <u>Pravin Banker Associates, Ltd. v. Banco Popular del Peru</u>, 9 F. Supp. 2d 300, 305

(S.D.N.Y. 1998) (the presumption of separateness of instrumentalities "should not be easily

defeated."); Hercaire Int'l, Inc. v. Argentina, 821 F.2d 559, 565 (11th Cir. 1987) (the Bancec

"presumption of independent status is not to be lightly overcome").

The presumption of separateness enjoyed by instrumentalities can only be overcome

when: (i) an entity "is so extensively controlled by its owner that a relationship of principal and

agent is created, . . . [such] that one may be held liable for the actions of the other" as the other's

alter ego; or (ii) recognizing the separateness of the agency or instrumentality "'would work

fraud or injustice.'" Bancec, 462 U.S. at 629 (citations omitted).  These narrow exceptions are

derived from established principles of corporate law and neither is remotely applicable here.

In order to establish an alter ego relationship between state and its instrumentality or

agency, the state must exercised such extensive control over the day-to-day operations of its

instrumentality or agency that the state is abusing its independent status, resulting in the loss of

the instrumentality's or agency's separate existence.  See Letelier, 748 F.2d at 794; LNC lnvs.,

Inc. v. Rep. of Nicaragua, 115 F. Supp. 2d 358, 363 (S.D.N.Y. 2000), aff'd sub nom, LNC Invs.,

Inc. v. Banco Central de Nicaragua, 228 F.3d 423 (2d Cir. 2000) (holding that "[a] government

instrumentality loses its separate juridical status and becomes the alter-ego or agent of its parent

government when the government exercises extensive control over the instrumentality's daily

operations and abuses the corporate form").

In the few cases in which an alter ego relationship has been found, the controlling entity

exercised extraordinary control.  E.g., United States Fid. & Guar. Co. v. Braspetro Oil Servs.

Co., 1999 WL 307666, at *9-10 (S.D.N.Y. May 17, 1999), aff'd, 199 F.3d 94 (2d Cir. 1999)

(found alter ego because officers of subsidiary were employees of parent, day-to-day decisions

on contracts at issue were made at parent's headquarters, and parent executed documents on

behalf of the subsidiary); <u>Kensington Int'l Ltd. v. Republic of Congo</u>, 2007 WL 1032269, at *10, 12 (S.D.N.Y. March 30, 2007) (held that formal audits that "highlighted the absence of any clear demarcation between Congo's finances and those of SNPC," a state-owned oil company, and "Congo's obvious disregard for SNPC's corporate form and a commingling of their assets," were "classic earmarks of an alter-ego relationship").

It is similarly difficult to establish the "fraud or injustice" prong of <u>Bancec</u>.  Indeed, "[t]he injustice that allows a corporate veil to be pierced is not a general notion of injustice; rather, it is the injustice that results only when corporate separateness is illusory."  <u>Katzir's Floor & Home Design, Inc. v. M-MLS.com</u>, 394 F.3d 1143, 1149 (9th Cir. 2004).

FHIS easily falls within the definition of an instrumentality in 28 U.S.C. § 1603(b) and fits squarely within <u>Bancec</u>'s description of the typical independent government instrumentality. The evidence before this Court also demonstrates that FHIS is not the alter ego of the Republic of Honduras, that the Republic of Honduras was not involved in the subject project, and that upholding the separateness of FHIS from the Republic would not result in fraud or injustice.

FHIS is an entity created by the Honduras National Congress by Decree No. 12-90 of February 22, 1990, which contains the Law of the Honduran Social Investment Fund, creating it as a juridical entity separate from the Republic of Honduras, with its own administrative, technical and financial autonomy, as stated in Articles 1 and 2 of its Law.  Declaration of Engineer Juan Jose Urquiza (FHIS witness) ("Urquiza Decl.") at ¶ 2.

The purpose of the FHIS is to promote improvement of living conditions of marginalized social groups in rural and urban areas, through programs and projects of social or economic development, with the intention of increasing productivity, employment and income and contributing to satisfaction of basic needs as stated in Article 3 of its Law.  Urquiza Decl. at ¶ 3.

21

Among the powers or duties of the FHIS, according to Article 4 of its law, are to: (a) negotiate loans with national and international organizations, (b) accept gifts, contributions, bequests and legacies of any kind, domestic or foreign, (c) negotiate and contract for non-reimbursable financing with national and international organizations, (d) promote and fund programs, projects and works related to urban and rural development, and (e) provide technical and methodological training to the municipalities (Article 4 of its Law).  Urquiza Decl. at ¶ 4.

FHIS also approves the appointment of the entity, public or private, to implement the program or project to be financed with its resources or with foreign resources, subject to Regulations and, if the projects require hiring public works or supplies, the Regulation will indicate, taking the amount into account, the contractor selection procedures that will be applied in each case. (Article 5 of its Law).  Urquiza Decl. at ¶ 5.

The departments of FHIS are the Higher Council of Directors, Executive Management and Internal Auditing. (Article 7 of its Law). The Superior Council of Directors, among other powers, corresponds to approve the policy and General Guidelines governing the activities of the FHIS (Article 10 of its Law). For its part, the Executive Director to act as representative of FHIS, and, among other functions, is responsible for selecting personnel and sign the respective contracts of professional or technical services (Article 14 of its Law). Finally, Internal Audit corresponds to oversee the execution of the FHIS budget and financial operations (Article 20 of its Law).  Urquiza Decl. at ¶ 6.

The assets of FHIS according to the Article 25 of its law are created, among others things, by funds that come from loans to be contracted, resources allocated to it from foreign or international entities, by way of grant aid, the recovery of capital from loans it makes and the interest earned, contributions by the Central Government and its autonomous institutions, and

any other kind of contributions, bequests, legacies and donations accepted by the Fund and from legal sources.  Urquiza Decl. at ¶ 7.

The foregoing demonstrates that FHIS is an entity with an independent juridical person, with its own assets and administrative, technical and financial autonomy, different from the Republic of Honduras, that can, among other things, negotiate and conclude contracts to meet its purposes, sue or be sued in the national courts and foreign tribunals and grant powers of attorney, without requiring any authorization of the executive branch or another branch of government. By being its own juridical person it is not represented by the Attorney General of the Republic of Honduras, to whom it would correspond in its capacity as legal representative of the Republic if the Republic of Honduras was the same as FHIS.  Urquiza Decl. at ¶ 8.

The Republic of Honduras also has submitted the Declaration of Luis Enrique Galeano Milla ("Galeano Milla Decl."), a government attorney employed by the Republic of Honduras, which submits his declaration on behalf of the Republic.  Mr. Galeano Milla also indicates that FHIS is independent from the Republic of Honduras.  Although FHIS is an instrumentality of the Republic of Honduras, it is an entity with its own juridical personality and assets different from the Republic of Honduras, so that it was FHIS that contracted directly with DRC, FHIS was the entity involved in the subject project, and FHIS had an agreement with USAID providing that the latter would pay the obligations arising out of the subject contract.  Galeano Milla Decl. at ¶ 3. Mr. Galeano Milla also confirms that FHIS was created by the National Congress of Honduras as an entity with its own juridical personality and assets which enjoys administrative, financial, and technical autonomy.  Id.

In addition, the Republic of Honduras has submitted the Declaration of Honduras attorney Julio Rendón Cano ("Rendón Cano Decl."), whom the Republic submits as its legal

expert on Honduras law.  Mr. Rendón Cano also opines, for the same reasons discussed above, that FHIS is a decentralized public institution that has its own legal personality and ownership over its assets, acting with administrative, technical and financial autonomy within the bounds of its functions, and that FHIS's "legal personality is separate from that of the State, and it has legal capacity to exercise its rights and fulfill its obligations on its own account."  Id. at ¶¶ 8-10.

Consequently, as indicated by FHIS Engineer Urquiza, the Republic of Honduras was not involved in the negotiation and execution of the subject Construction Contract.  Urquiza Decl. at ¶ 9; Galeano Milla Decl. at ¶ 4.  In addition, the Republic of Honduras had no participation in the arbitration process, which resulted in the Award which apparently requires, not the Republic, but only to FHIS to pay certain amounts of money.  Urquiza Decl. at ¶ 10; Galeano Milla Decl. at ¶ 4.  The lack of involvement by the Republic of Honduras in the subject project and resulting arbitration further confirms that FHIS is a separate juridical entity with the necessary autonomy.

Indeed, FHIS is precisely the type of separate instrumentality that is recognized by our courts to insulate the sovereign from claims of waiver of immunity or liability.  In Compagnie Noga D'Importation et D'Exportation, S.A. v. Russian Federation, 361 F.3d 676 (2nd Cir. 2004), the court held that the Government of Russia and the Russian Federation were one and the same, because the Russian Government was a political organ (like a ministry) of the Russian Federation.  Importantly, the court emphasized that "had either the Government or the Russian Federation wanted to shield the latter entity from being the subject of these confirmation proceedings, either could have designated a publicly-owned state corporation or instrumentality as the entity to contract with Noga."  Id. at 685-86 (emphasis added).  Unlike the authorities in Russia, the Republic of Honduras took exactly such a step by forming FHIS as a separate instrumentality and then, of course, FHIS was the only entity that contracted with DRC.

Similarly, under the Federal Circuit's decision in <u>Transaero, Inc. v. La Fuerza Aera</u>

<u>Boliviana</u>, 30 F.3d 148 (D.C. Cir. 1994), and its progeny, FHIS must be considered to be an

instrumentality of the Republic of Honduras, and it separateness must be respected under the

FSIA, because its score functions are primarily commercial and not governmental.  <u>Id.</u> at 151-

152.  FHIS entered into a contract with DRC for reconstruction work after Hurricane Mitch

caused damage in Honduras.  DRC's role was to be involved in the project, and inform USAID

whether DRC performed as required for USAID to provide payments to DRC.  These functions

were consistent with the purposes for which FHIS was formed as a separate juridical entity.  The

core function of FHIS was, indeed, primarily commercial in nature, as discussed above.

As a result, FHIS should be considered to be an instrumentality and its separateness must

be respected, as opposed to being treated as one and the same as the foreign state itself.

4.      <u>DRC'S OWN PRIOR ALLEGATIONS AND AFFIDAVITS ALSO CONFIRM
        THE SEPARATENESS OF FHIS AND THE LACK OF INVOLVEMENT BY
        THE REPUBLIC OF HONDURAS.</u>

DRC's prior filings in the United States Action confirm the separateness of FHIS and that

the Republic of Honduras had no involvement in the project.  In its motion to dismiss the United

States Government Action, DRC admits that USAID "work[ed] <u>in collaboration with FHIS</u> in

connection with the Projects."  Basombrio Decl. at Exhibit 2 (p. 1) (emphasis added); <u>accord</u>

DRC's memorandum in support of said motion, <u>id.</u> at Exhibit 3 (p. 2).  Nowhere does DRC

claim that the Republic of Honduras agreed to pay DRC or was involved in the projects.  Instead,

the Affidavit of Murray Paul Farmer filed in support of DRC's motion to dismiss states that

"USAID was the source of FHIS' funding for the Contract."  <u>Id.</u> at Exhibit 4 (¶2).  Mr. Farmer

admits that DRC's contract performance dealings were <u>with FHIS</u>.  <u>Id.</u> (¶7).  As indicated in the

Court's order denying DRC's motion to dismiss, payments were made by USAID to DRC, not

by the Republic.  <u>Id.</u> at Exhibit 7 (p. 1).  DRC also filed an Affidavit of Marco Zavala in

connection with its motion for reconsideration of the denial of its motion to dismiss (which

reconsideration motion was also denied.)  Mr. Zavala also states in detail that "FHIS reviewed

and approved or disapproved DRC's payment request," and if FHIS approved it, it certified

payment to USAID, and DRC was paid directly by the United States Treasury.  Id. at Exhibit 9

(¶¶ 4-5) (emphasis added).  FHIS never made payments, because it was never agreed that FHIS

would be making payments to DRC, and the Republic of Honduras had no involvement in the

negotiation of the Construction Contract or the performance of the same.  Based on DRC's prior

admissions and arguments, it is clear the Republic of Honduras did not exercise "extraordinary"

or other such control over FHIS so as to render FHIS an alter ego of the Republic of Honduras.

In fact, even the Honduras arbitrators, in the Arbitration Award, also noted that FHIS is a

"decentralized institution" of the executive branch, "having been granted legal capacity," and

created by a decree of the National Congress.  See Exhibit E to Farmer Affidavit at page 131 of

195 (page citation is to the PACER docket entry since the award is not page numbered).

Accordingly, there are simply no factual or legal grounds to overcome the presumption of

separateness between the Republic of Honduras and its instrumentality, FHIS.  The Republic of

Honduras enjoys foreign sovereign immunity in these judicial proceedings and, thus, the Petition

must be dismissed under the FSIA for lack of subject matter jurisdiction.

C.    THIS PETITION SHOULD BE STAYED OR DISMISSED UNDER PRINCIPLES OF
       INTERNATIONAL COMITY AND/OR ON GROUNDS OF ABSTENTION.

Comity is the "recognition which one nation allows within its territory to the legislative,

executive and judicial acts of another nation."  Societe Nationale Industrielle Aerospatiale v.

U.S. District Court, 482 U.S. 522, 544 note 27 (1987).  "[C]ourts in this country have long

recognized the principles of international comity and have advocated them in order to promote

cooperation and reciprocity with foreign lands."  Pravin Assocs., Ltd. v. Banco Popular del Peru,

109 F.3d 850, 854 (2nd Cir. 1997).

"Comity of courts" is where "judges decline to exercise jurisdiction over matters more appropriately judged elsewhere." <u>Freud v. Rep. of France</u>, 592 F.Supp.2d 540, 565 (S.D.N.Y. 2008).  "To justify abstention under these principles, the foreign proceedings must be parallel, the alternative forum must be adequate and additional circumstances must be present that outweigh courts' general obligation to exercise their jurisdiction … Other relevant factors include the similarity of parties, similarity of issues, the order in which the actions were filed, the potential prejudice to either party, convenience of the parties, connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction." <u>Id.</u>

This Court has the power to stay or dismiss this petition under principles of international comity, based on the pendency of the Honduras confirmation proceedings. <u>E.g.</u> <u>Telcordia Tech Inc. v. Telkom S.A. Ltd.</u>, 458 F.3d 172, 181 (3rd Cir. 2006) (dismissal without prejudice of enforcement action brought under Convention was appropriate under principles of international comity pending resolution of foreign lawsuit seeking to annul award).

This Court should stay or dismiss this petition based on comity or abstention grounds.  As discussed above, there is <u>a previously filed</u> parallel proceedings pending in Honduras, between the true parties in interest – DRC and FHIS – in which the Honduras courts are addressing the issues whether the Arbitration Award is valid and enforceable.  Under the principle of comity, courts "defer to proceedings taking place in foreign countries." <u>Jota v. Texaco, Inc.</u>, 157 F.3d 156, 159-160 (2nd Cir. 1998).  Importantly, it was DRC that filed the Honduras confirmation action.  There is also no doubt that the Honduras courts have jurisdiction over the Republic of Honduras.  Thus, the Honduras forum is adequate and DRC's specific choice of the Honduras forum outweighs this Court's general obligation to exercise its jurisdiction.

The other relevant factors also weigh in favor of abstention under comity principles. There is similarity of issues, the Honduras Action was filed first, there is potential prejudice to the Republic of Honduras if this court were to enforce the Arbitration Award against it and the Honduras courts held the Award to be void or unenforceable, and the Honduras forum is convenient to DRC because it is litigating there.  Although DRC is a party to both actions, and FHIS and the Republic are not, it is FHIS against whom the Award was rendered and if it unenforceable against FHIS, it cannot be enforced against the Republic either.  Finally, because the Republic had no involvement in the Construction Contract, project or arbitration, it would be unreasonable to force it to litigate in the United States.  Freud, 592 F.Supp.2d at 565.

Thus, this action should be dismissed also based on international comity principles.

D.      THE PETITION SHOULD BE DISMISSED BASED ON THE DOCTRINE OF
        INCONVENIENT FORUM IN FAVOR OF THE HONDURAS COURTS.

A petition to confirm an arbitration award is subject to forum non conveniens analysis. In the Matter of Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine, 311 F.3d 488 (2nd Cir. 2002), is on point.  A Monaco reinsurer petitioned under the New York Convention to confirm a Russian arbitration award against a Ukraine company and the Ukraine State.  Although the trial court had subject matter jurisdiction under the Convention, the Appeals Court affirmed the dismissal of the enforcement petition on inconvenient forum grounds.  Id. at 497-498.  A confirmation petition is subject to that doctrine because "proceedings for enforcement of foreign arbitration awards are subject to the rules of procedure that are applied in the courts where enforcement is sought" and the doctrine of forum non conveniens is "procedural."  Id. at 495.

"The first level of inquiry in a forum non conveniens analysis is to determine what deference is owed a plaintiff's choice of forum.  A domestic petitioner's choice of its home forum receives a great deference, while a foreign petitioner's choice of a United States forum

receives less deference." Monegasque, 311 F.3d at 498.

Under this analysis, DRC's choice of a United States forum would be given deference based on the fact that DRC is incorporated in the United States. However, no deference should be paid to DRC's choice of forum in this matter, because DRC previously chose to initiate confirmation proceedings in Honduras, not in the United States.

"Our next inquiry is to determine whether an alternative forum exists." Monegasque, 311 F.3d at 499. "An alternative forum is ordinarily adequate if the defendants are amenable to service of process there and the forum permits litigation of the subject matter of the dispute." Id.

The Honduras judicial forum also meet this standard because DRC initiated confirmation proceedings in Honduras, and the Republic of Honduras is subject to process there.

In addition, the Republic of Honduras has submitted the Declaration of legal expert Mr. Rendón Cano on this issue, who establishes that indeed the courts of Honduras are an adequate alternative forum. According to the Constitution of the Republic, Honduras is subject to the Rule of Law (art. 1) and governed by three independent powers – the Legislature, the Executive and the Judiciary – none of which are subordinated to the others (art. 4). Rendón Cano Decl. at ¶ 2. Legislative Power is exercised by a Congress of Representatives elected by direct suffrage of the citizens (art. 189) for a period of four years (art. 196). Id. at ¶ 3. Executive Power is exercised by the President of the Republic, who is directly voted in by the citizens for a period of four years (arts. 235-237). Id. at ¶ 4. The Judiciary consists of the Supreme Court of Justice, the Courts of Appeal, the courts of first instance and other judicial agencies (art. 304). It has the power to dispense justice through independent magistrates and judges who are subject only to the Constitution and to the law (art.304), applying the law to specific cases, trying the cases and enforcing the judgments (arts., 304). Id. at ¶ 5. The Supreme Court of Justice (the highest court)

consists of fifteen Judges elected by the National Congress for a period of seven years (arts. 312, 314), following a candidate selection procedure conducted by a Nomination Board made up of a representative of the Supreme Court, a Representative of the Honduran Bar Association, the National Commissioner for Human Rights, a representative of the trade unions, a representative of the Honduran Council of Private Enterprise, a representative of the civil society organizations and a representative of the Law Faculties of the universities (art. 311). Id. at ¶ 6. Finally, the Constitution of the Republic guarantees due process. It provides that the right to present one's case is inviolable, and that everyone has unrestricted access to the courts to conduct their cases in the ways prescribed by law (art. 82). It also provides that no person may be judged other than by a competent judge or court, with the formalities, rights and guarantees established by law (art. 90). Id. at ¶ 7. Clearly, the Honduras courts are an adequate and available alternative forum.

Lastly, Monegasque noted that a court must balance private and public interest factors.

First, private factors "pertain to the convenience of the litigants –relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; … and all other practical problems that make trial of a case easy, expeditious and inexpensive." Monegasque, 311 F.3d at 500. Again, because DRC chose to first initiate confirmation proceedings in Honduras, it cannot be disputed that the private interest factors favor a Honduras forum. Other than DRC, all witnesses are in Honduras, and the Honduras court can compel the attendance of DRC because DRC initiated the pending litigation there. On the other hand, DRC has not sued FHIS in these proceedings, and this Court cannot compel the testimony of persons in Honduras. The execution of the agreement between DRC and FHIS took place in Honduras, the agreement is subject to the laws of Honduras, and the arbitration took place in Honduras. Thus, it would be disingenuous for DRC to argue that the

private interests do not favor the Honduras forum.

Second, public interest factors "include administrative difficulties associated with court congestion; imposition of jury duty upon those whose community bears no relationship to the litigation; local interest in resolving local disputes; and problems implicated in the application of foreign law." Monegasque, 311 F.3d at 500.  This factor also weighs heavily in favor of the Honduras forum.  Honduras has an obvious and strong interest in adjudicating this dispute.  And, Honduras courts are better suited to apply Honduras law.

Indeed, in Termorio S.A. E.S.P. v. Electroficadora del Atlantico S.A. et al., 421 F.Supp. 2d 87 (D.D.C. 2006), this Court dismissed, on inconvenient forum grounds, an action brought by a Colombian plaintiff against a state-owned Colombian entity and the Republic of Colombia (the latter on an alter ego basis) to enforce a Colombian arbitration award, although the court held it had subject matter jurisdiction under the New York Convention and the FSIA arbitration exception to sovereign immunity applied.  Id. at 103-104.  This Court held that "[t]his matter is a peculiarly Colombian affair, and should properly be adjudicated in that country."  Id.  The instant Petition also should be dismissed in favor of the Honduras forum on the same grounds.

E.      THIS PETITION MUST BE DISMISSED BECAUSE IT PRESENTS A NON-
        JUSTICIABLE POLITICAL CONTROVERSY.

The instant Petition also presents a non-justiciable political controversy and, thus, these proceedings must be dismissed under the political question doctrine.

The political question doctrine holds that a court should abstain if a case raises questions better addressed by the political branches, Baker v. Carr, 369 U.S. 186, 210 (1962), rooted in Marbury v. Madison, 5 U.S. (1 Cranch) 137, 164-66 (1803), where Chief Justice Marshall held: "[q]uestions, in their nature political ... can never be made in this court."  The political question

doctrine distinguishes between cases encompassing foreign relations rather than addressing purely domestic issues of this forum.  U.S. v. Curtiss-Wright Export Corp., 299 U.S. 304 (1936).

The application of the political question doctrine in the field of foreign relations requires "discriminating analysis of the particular question posed, in terms of the history of its management by the political branches, of its susceptibility to judicial handling in the light of its nature and posture in the specific case, and of the possible consequences of judicial action." Baker, 369 U.S. at 211-212; see also Kadic v. Karadzic, 70 F.3d 232, 249 (2d Cir.1995). In Baker, the Supreme Court identified six tests to guide this analysis:

> "[1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question."

Baker, 369 U.S. at 217; see also Vieth v. Jubelirer, 541 U.S. 267, 277 (2004) (characterizing Baker as setting forth "six independent tests for the existence of a political question"). Based on these tests, the doctrine is "essentially a function of separation of powers." Baker, 369 U.S. at 217; Kadic, 70 F.3d at 249.

The second, third, fourth and sixth of the Baker factors, examined to determine whether the doctrine applies, are implicated in DRC's Petition raising nonjusticiable political questions.

At its core, this petition seeks to make the Republic of Honduras a guarantor of USAID's payment obligations in contravention of United States policy.  The United States government has taken the position that USAID must be refunded all payments made to DRC, and that USAID is not obligated to make any further payments to DRC.  Yet, DRC seeks to hold the host country liable to make the payments that would have been otherwise made solely by USAID.

First, there are no judicially discoverable and manageable standards for resolving this key issue presented in DRC's instant Petition (the second of the six Baker factors).

This doctrine is triggered when a claim suffers from "a lack of judicially discoverable and manageable standards for resolving it." Baker, 369 U.S. at 217.  "One of the most obvious limitations imposed by [Article III, § 1, of the U.S. Constitution] is that judicial action must be governed by *standard,* by *rule.*" Vieth v. Jubelirer, 541 U.S. 267, 278 (2004) (plurality opinion). "The factor is a recognition that "courts are fundamentally under equipped to formulate national policies or develop standards for matters not legal in nature." Japan Whaling Ass'n v. American Cetacean Soc., 478 U.S. 221, 230 (1986).

The Republic of Honduras did not sign any agreement with DRC.  There is no contract or other obligation between DRC and the Republic of Honduras that could be interpreted and applied by this Court to decide the issue at bar.

Second, thus, in adjudicating this Petition, it will be impossible for the Court to avoid making policy determinations of the type outside judicial discretion (third Baker factor).

Aktepe v. U.S., 105 F.3d 1400, 1404 (11th Cir.1997) refused to entertain tort suits by Turkish sailors against the U.S. Navy for injuries sustained during a training exercise because, resolution of the suits required the court to "render a policy determination regarding the necessity of simulating actual battle conditions."  That is also the case here as discussed below.

Third, in adjudicating this Petition, it will be impossible for the Court to undertake an independent resolution without expressing lack of the respect due coordinate branches of government (fourth Baker factor).

The fourth Baker test is satisfied "if judicial resolution of a question would contradict prior decisions taken by a political branch in those limited contexts where such contradiction

33

would seriously interfere with important governmental interests." <u>Kadic</u>, 70 F.3d at 249.

USAID undertook the obligation to fund the project and pay DRC.  If this Court were to hold the Republic liable to pay monies that USAID has lawfully withheld due to DRC's alleged fraud, then the Court would be expressing lack of respect due the executive branch.

And <u>fourth</u>, in adjudicating this Petition, there is significant potential for embarrassment from multifarious pronouncements by various departments of the United States government on one question (sixth <u>Baker</u> factor).

As discussed above, USAID represents to foreign sovereigns that the aid is in the form of grants by the United States people.  USAID, as noted, also undertakes to fund the subject project, as it did in Honduras.  The resulting Construction Contract specifically states that it is USAID that will fund the reconstruction contract.  If this Court were now to hold that the host country, instead, must fund the contract because USAID has exercised its legal right to withhold payment under United States law, different branches of the United States would be reaching contradictory positions with respect to the United States policy on foreign aid, which would most likely result in embarrassment, and potentially also do damage to the USAID mission.

In summary, it is impossible to answer the question whether the Republic of Honduras should be liable for sums not paid by USAID without making policy determinations; specifically, whether a host country should be obligated to make payments that USAID has refused to make to a contractor on the basis of United States law.

These concerns also have been articulated by the Republic of Honduras' witness herein, government attorney Luis Enrique Guleano Milla, who indicates that:

> After Hurricane Mirch, Honduras arrived at understandings with the Government of the United Sates of America through the United States Agency for International Development (USAID) to carry out activities of reconstruction in this country, and in the arrangements and the contract between DRC and FHIS the Republic of Honduras did not

become the guarantor of the payment obligations corresponding to USAID, and this can be also gathered from the fact that the arbitration demand did not include the Republic of Honduras as main debtor or guarantor. If the arbitration award is recognized against the Republic of Honduras, the Republic of Honduras would cease to be the beneficiary of aid from the United States of America and would become a debtor despite not having been found liable in the arbitration, and such a result would create an undue obligation prejudicial to the interests of the Republic of Honduras, which has not been a party in the subject proceedings, imposing on it an unjust and unforeseen liability.

Galeano Milla Decl. at ¶ 6.

Because the instant petition raises such issues of sensitive political importance that are better addressed by the executive branch of the United States government, this Court must decline to entertain these political questions, and must dismiss this Petition.

F.    THE PETITION MUST BE DISMISSED BECAUSE THE COURT LACKS PERSONAL JURISDICTION OVER REPUBLIC OF HONDURAS.

Even if a district court has subject matter jurisdiction to enforce an arbitration award, the court must also have personal jurisdiction over the respondent.  If it lacks personal jurisdiction over the respondent, the district court must dismiss the petition to confirm an arbitral award. Creighton, 181 F.3d at 124-125; Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1119-1128 (9th Cir. 2002); Base Metal Trading Limited v. OJSC Novokuznetsky Aluminum Factory, 283 F.3d 208, 211-216 (4th Cir. 2002).

The Due Process Clause of the Fifth Amendment of the U.S. Constitution requires that a defendant have such "minimum contacts" with the forum such that the maintenance of the suit "will not offend traditional notions of fair play and substantial justice."  International Shoe v. Washington, 326 U.S. 310, 316 (1945).

Sufficient minimum contacts exist when a defendant should reasonably expect to be haled into a forum's courts because it purposefully availed itself of the privilege of conducting business in the forum and, thus, of invoking the benefits and protections of the forum's laws. Coen v. Coen, 509 F.3d 500, 509 (8th Cir. 2007).

Here, it is evident that the Republic of Honduras does not have sufficient contacts with the District of Columbia.  The subject agreement was between DRC and FHIS, and the separated identity of FHIS must be respected.  The Letter of Commitment was issued by USAID to DRC, not to the Republic.  As discussed above in detail, the Republic of Honduras had no involvement in the negotiation or execution of the subject Construction Contract or in the resulting arbitration process.  The Republic of Honduras, thus, cannot be said to have it purposefully availed itself of the privilege of conducting business in this forum, and of invoking the benefits and protections of this forum's laws.

The issue is that the D.C. and Second Circuits have held that foreign sovereigns are not entitled to Due Process.  These Courts held that because States of the Union are not "persons" under the Fifth Amendment and thus not entitled to Due Process, foreign sovereigns also should not be afforded due process protections "absent some compelling reason to treat sovereigns more favorably than States in the Union."  See Price v. Socialist people's Lybian Arab Jamahiriya, 294 F.3d 82, 95-100 (D.C. Cir. 2002); Frontera Resources Azerbajan Corp. v. State Oil Co., 582 F.3d 393, 396 (2nd Cir. 2009).  Compelling reasons exist:  Comity is the Golden Rule of international relations:  one state will treat another in like kind.  The United States would want to be afforded due process in the courts of foreign states like Honduras.  Moreover, foreign states (unlike the State of the Union) lack representation in Congress, thus, they have no say in the enactment of the laws to which they would be subjected if haled into United States courts.

In addition, the D.C. and Second Circuit's emphasis on a sovereign's status as a "person" is misplaced, because the Congress incorporated due process considerations and protections into the FSIA.  See Moore v. United Kingdom, 384 F.3d 1079, 1090 (9th Cir. 2004) (FSIA "codifies" the "long-standing presumption that due process requires plaintiffs seeking default judgments to

make out a prima facie case."); BP Chemicals Ltd. v. Jiangsu SOPO Corp., 420 F.3d 810, 818

(8th Cir. 2005) (the nexus requirement in the commercial exception satisfies due process).

But perhaps the most direct evidence of said Congressional intent is found in House

report on the enactment of the FSIA, which states:

> "The requirements of minimum jurisdictional contacts and adequate notice are
> embodied in the [FSIA].  Significantly, each of the immunity provisions in the bill
> … requires some connection between the lawsuit and the United States, or an
> expressed or implied waiver by the foreign state of its immunity from jurisdiction.
> These immunity provisions, then, prescribe the necessary contacts which must
> exist before our courts can exercise personal jurisdiction."

H.R.Rep. 94-1487 at 13, reprinted in 1976 U.S.C.A.N.N. at p. 6612 (citing International Shoe).

Accordingly, Due Process considerations should be taken into account and, when they are

taken into account, they demonstrate that the Republic of Honduras lacks the required minimum

contacts with the District of Columbia, and it would be unreasonable for the Republic to be

required to litigate here, for the reasons discussed above.

Therefore, the instant Petition must be dismissed also for lack of personal jurisdiction

over the Republic of Honduras.

G.      THE PETITION MUST BE DISMISSED FOR A FAILURE TO JOIN A NECESSARY
        AND INDISPENSABLE PARTY:  FHIS.

Finally, Rule19 of the Federal Rules of Civil Procedure requires joinder of a party, or

dismissal of the civil action absent that party, where that party is deemed to be necessary under

Rule 19(a) and indispensable under Rule 19(b).  Corsi v. Eagle Publ., Inc., 2008 WL 239581 at

*3 (D.D.C. 2008); Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Washington,

699 F.2d 1274, 1278-79 (D.C. Cir. 1983).

Only one of the three criteria in Rule 19(a) is required for a party to be considered

necessary.  Corsi, 2008 WL 239581 at * 3.

/ / /

Under Rule 19(a), FHIS is a necessary party because complete relief cannot be accorded in its absence and the existing parties will be subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations without it. Cloverleaf Standardbred, 699 F.2d at 1278-79. FHIS was the party to the arbitration which resulted in the subject Arbitration Award. As noted, there is also a pending confirmation action by DRC against FHIS in Honduras. In the absence of FHIS, then, there is a substantial risk of double recovery should DRC prevail on enforcement of the Award here and in Honduras. If this Court and the Honduras court reach different results on the same Award (unless this Court denies recovery based on, for example, the ground that the separateness of FHIS from the Republic must be respected), then there also may be a risk of inconsistent judgments regarding enforceability of the Award.

If joinder of a necessary party is not feasible, courts consider whether a necessary party is indispensable. FHIS cannot be joined because there is a lack of personal jurisdiction over it. It is undisputable that the Federal and Second Circuits have not abrogated the Due Process analysis as it pertains to instrumentalities of foreign sovereigns, because as incorporated or separately formed juridical entities they would be considered to be persons under the United States Constitution. Here, there is a lack of the required minimum contacts between FHIS and the District of Columbia. FHIS did not contract with USAID. USAID contracted with DRC. As discussed, FHIS's communications and dealings were with the local USAID offices. FHIS does not have any offices, operations, employees or bank accounts in the United States. Urquiza Decl. at ¶ 14. The contract between FHIS and DRC also does not create a sufficient nexus to the District of Columbia because DRC is a South Carolina corporation with principal offices in Alabama. The subject contract was executed in Honduras, to be performed within Honduras, and subject to Honduras law. Thus, it cannot be said that FHIS invoked this judicial forum.

The factors considered in connection with the Rule 19(b) (indispensable party) portion of the analysis are: (1) plaintiff's interest in having a forum; (2) defendant's interest in avoiding inconsistent relief or multiple litigation; (3) interests of the absent party; and (4) interests of the public and courts in consistent, complete, and efficient settlement of cases.  Provident Tradesmen's B&T Co. v. Patterson, 390 U.S. 102, 108-11 (1968)).

Under these factors, FHIS also is an indispensable party under Rule 19(b).  Because DRC has an alternative forum in Honduras which it has already invoked precisely against FHIS, the Republic of Honduras has an interest in avoiding multiple litigation, FHIS has opposed confirmation in Honduras so it is interested in the subject matter and disputes DRC's position, a judgment rendered in these proceeding in the absence of FHIS would be inadequate because it could result in double recovery or inconsistent judgments, the courts of Honduras are better equipped to handle these proceedings as discussed above, and judicial economy and efficiency warrant dismissal of these proceedings in favor of the Honduras forum.  If this action were dismissed, DRC would have an alternative and adequate remedy:  it can proceed in Honduras.

Thus, the Petition must be dismissed for failure to join a necessary and indispensable party, FHIS.  FHIS cannot be joined because there is a lack of personal jurisdiction over it.

/ / /

/ / /

/ / /

IV.   <u>CONCLUSION</u>

For the foregoing reasons, this Court should stay these judicial proceedings until after the final adjudication of the United States government's lawsuit against DRC, the Honduras judicial proceedings, and the DRC claims against USAID or, in the alternative, this Court should dismiss the instant Petition.

Respectfully submitted,

Dated:  May 14, 2010

_/s/ Timothy J. Koeppl_____
Timothy J. Koeppl (D.C. Bar # 983307)
DORSEY & WHITNEY, LLP
1801 K Street, NW, Suite 750
Washington, DC 20006
(202) 442-3510 (telephone)
(202) 442-3199 (facsimile)
koeppl.timothy@dorsey.com

Juan C. Basombrio (Admitted *Pro Hac Vice*)
Dorsey & Whitney LLP
38 Technology Drive, Suite 100
Irvine, California 92618
(949) 932-3650 (telephone)
(949) 932-3601 (facsimile)
basombrio.juan@dorsey.com

Counsel for Respondent
**REPUBLIC OF HONDURAS**