UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
DRC, INC.,                         )
                                   )
        Petitioner,                )
                                   )
    v.                             )   Civil Action No. 10-0003 (PLF)
                                   )
REPUBLIC OF HONDURAS,              )
                                   )
        Respondent.                )
_____)

OPINION

       This is an action to enforce a foreign arbitration award rendered in the Republic of Honduras by Honduran arbitrators under Honduran law. The underlying dispute arose out of a construction contract between petitioner, DRC, Inc. ("DRC"), and the Fondo Hondureño de Inversión Social ("FHIS") — an instrumentality of respondent, the Republic of Honduras (the "Republic") — under which DRC agreed to construct certain water and wastewater sub-projects in Honduras. DRC demanded arbitration with FHIS, and, after approximately twenty-four days of arbitration proceedings, an arbitration award was rendered against FHIS that required FHIS to pay DRC over $51 million. DRC has now petitioned this Court for confirmation of this arbitration award against the Republic of Honduras.

       There are six motions currently pending before the Court: (1) the Republic's motion to stay; (2) the Republic's motion to dismiss; (3) the Republic's motion to bifurcate; (4) the Republic's motion to dismiss with prejudice because of DRC's alleged severe litigation misconduct; (5) DRC's motion to strike materials submitted by the Republic in support of its

motion to dismiss; and (6) DRC's motion to place certain filings under seal. Upon consideration of the parties' papers, the relevant legal authorities, and the entire record in this case, the Court will grant the Republic's motion to stay and will postpone ruling on DRC's petition in light of the pendency of a prior, parallel action before the Honduran Supreme Court, <u>DRC, Inc. v. Fondo Hondureño de Inversión Social</u>, Case No. 301-2009.[1]

## I. BACKGROUND

### A. Construction Contract for Infrastructure Work in Honduras

Hurricane Mitch struck Central America in 1998 and caused tremendous destruction and dislocation. <u>See</u> Mot. at 1. In response, the United States Agency for

---

[1] The papers reviewed in connection with the pending motion to stay include the following: petition of DRC, Inc. for confirmation of a foreign arbitration award ("Pet."); DRC, Inc.'s memorandum in support of its petition for confirmation of a foreign arbitration award ("Pet. Mem."); respondent's preliminary response to petition to confirm arbitration award ("Pet. Opp."); DRC's reply in support of its petition to confirm international arbitration award ("Pet. Reply"); respondent's motion to stay action or, in the alternative, dismiss petition ("Mot."); DRC's response to the Republic of Honduras' motion to stay action or, in the alternative, dismiss petition ("Opp."); reply in support of respondent's motion to stay and, in the alternative, dismiss petition ("Reply"); United States statement of interest ("First U.S. Statement"); DRC, Inc.'s response to the United States' statement of interest ("Response to U.S. Statement"); United States Agency for International Development second statement of interest ("Second U.S. Statement"); respondent's motion to bifurcate ("Bifurcate Mot."); DRC's response to the motion to bifurcate of the Republic of Honduras ("Bifurcate Opp."); reply in support of respondent's motion to bifurcate ("Bifurcate Reply"); respondent's motion to dismiss with prejudice the petition for petitioner's severe litigation misconduct ("Misconduct Mot."); DRC, Inc.'s opposition to the Republic's motion to dismiss for alleged litigation misconduct ("Misconduct Opp."); reply in support of respondent's motion to dismiss with prejudice the petition for petitioner's severe litigation misconduct ("Misconduct Reply"); DRC's motion to strike an illegal transcript and other materials submitted by the Republic to support its motion to dismiss ("Strike Mot."); respondent's memorandum in opposition to petitioner's motion to strike transcript and other materials ("Strike Opp."); DRC Inc.'s reply in support of its motion to strike an illegal transcript and other materials ("Strike Reply"); DRC, Inc.'s motion to place under seal ("Seal Mot."); respondent's memorandum in opposition to petitioner's motion to seal the record ("Seal Opp."); and DRC Inc.'s reply in support of its motion to seal ("Seal Reply").

International Development ("USAID") funded reconstruction projects in various Central American countries, including Honduras. Id. One such project was undertaken in collaboration with FHIS, an instrumentality of the Republic of Honduras. See id.[2] This project involved the construction of certain water and wastewater sub-projects in Honduras. Pet. at 2; see Mot. at 1. FHIS solicited bids for the project, and DRC was eventually selected as the contractor. See Mot. at 1, 6.

FHIS and DRC therefore entered into a construction contract on June 21, 2000. See Pet., Farmer Aff. Ex. B, Construction Contract ("Construction Contract") at 9, June 21, 2000; see also Pet. at 2; Pet. Opp. at 4. According to the Republic, the Construction Contract expressly provided "that the work would be funded by USAID, and USAID would pay DRC." Mot. at 1. In addition, USAID issued a Letter of Commitment to DRC, in which USAID committed to pay for the construction work through grants payable directly to DRC. Id.

The Construction Contract between FHIS and DRC required that all controversies and disputes be governed by the Construction Contract Liability Clauses. Construction Contract at 8; see also Pet. at 3. According to DRC, the Construction Contract Liability Clauses state "the parties' agreement to resolve disputes arising under the Contract pursuant to arbitration." Pet. at 3; see Pet., Farmer Aff. Ex. C, Mandatory Clauses, Construction Services Contracts at 17 ¶ 9(c).

---

[2]  "Fondo Hondureño de Inversión Social" translates to the Honduran Social Investment Fund. Mot. at 5. The parties appear to agree that FHIS is in fact an instrumentality of the Republic of Honduras. See Pet. at 2; Mot. at 1, 5. The parties disagree, however, whether the Republic should be held liable for FHIS' purported obligations. Compare Mot. at 18 (arguing that "[t]he separateness between FHIS and the Republic . . . must be respected"), with Opp. at 23 (arguing that "FHIS is part of the executive branch and, therefore, part of the Republic").

*B. Problems Arising Out of the Construction Contract*

In June and July 2004, DRC brought two suits against the United States government in the United States Court of Federal Claims.  See DRC, Inc. v. United States, Civil Action No. 04-940C (Fed. Cl., filed June 1, 2004); DRC, Inc. v. United States, Civil Action No. 04-1124C (Fed. Cl., filed July 7, 2004).  The first suit, Civil Action No. 04-940C, arises out of the Letter of Commitment that USAID provided to DRC in connection with the Construction Contract.  See Mot. at 7.  DRC alleges that the Letter of Commitment created a contract between DRC and USAID, and that USAID breached that contract by failing to pay certain invoices.  See Mot., Basombrio Aff. Ex. 20, Complaint in Civil Action No. 04-940C ¶¶ 28-32.  The second suit, Civil Action No. 04-1124C, relates to an assignment to USAID of a different contract between DRC and FHIS.  See Mot. at 7; see also Mot., Basombrio Aff. Ex. 26, Complaint in Civil Action No. 04-1124C ¶¶ 44-48.

Several months later, in September 2004, the United States brought suit against DRC in this Court, asserting claims under the False Claims Act and the common law.  See United States v. DRC, Inc., Civil Action No. 04-1608 (Roberts, J.) ("FCA Action").  In this FCA Action, the government "seeks to recover payments made to [DRC] for contract infrastructure work in Honduras, alleging *inter alia* that DRC misrepresented itself in order to obtain the contract and subcontracted out most of the work without USAID's approval."  Memorandum Order at 1, Feb. 17, 2009 (Oberdorfer, J.); see also Mot. at 6-7.[3]  In other words, the government

---

[3]  Although this FCA Action is assigned to Judge Roberts, DRC's motion to dismiss that case was transferred to Judge Oberdorfer for decision.  See Memorandum Order at 1 n.1., Feb. 17, 2009 (Oberdorfer, J.).

4

alleges that DRC committed fraud in both the procurement and in the performance of the Construction Contract.  See Mot. at. 7.

After the United States filed the FCA Action against DRC in this Court, it moved for a stay of the two proceedings before the Claims Court.  That court, over DRC's objection, granted the government's motion, finding that

> [a] stay in [Civil Action No. 04-940C and Civil Action No. 04-1124C] is necessary because the dispositive issue of fraud is already being litigated in the District Court for the District of Columbia.  Moving forward with the proceedings in this court would result in duplicative litigation on the issue.  The issue of fraud is relevant to the [Letter of Commitment] from USAID because a finding that DRC acted fraudulently in obtaining the Honduran contracts would have a dispositive effect on DRC's LOC-based claims in this court.  Therefore, the parties would be engaging in duplicative litigation if the cases were permitted to move forward.

Mot., Basombrio Aff. Exs. 25 & 31, DRC, Inc. v. United States, Civil Action No. 04-940C, Order at 2-3 (Fed. Cl. Jan. 24, 2005); DRC, Inc. v. United States, Civil Action No. 04-1124C, Order at 2-3 (Fed. Cl. Jan. 24, 2005).  Accordingly, Civil Action No. 04-940C is presently stayed pending resolution of the FCA Action in this Court. With respect to the latter, on February 17, 2009, Judge Oberdorfer denied DRC's motion to dismiss.  See Memorandum Order at 8, Feb. 17, 2009 (Oberdorfer, J.); see also Mot. at 7.  Thus, the parties in the FCA action before Judge Roberts are now proceeding with discovery.

In early 2009, DRC demanded arbitration with FHIS.  Opp. at 8; Pet. at 3.  DRC sought damages totaling over $86 million, arising out of purported breaches of the Construction Contract.  See Pet. at 3.  Arbitration proceedings commenced and, as DRC describes it, "[t]he arbitral tribunal consisted of three Honduran attorneys," Opp. at 8, and the arbitration

proceedings resulted "in approximately 24 hearing days during which [DRC and FHIS] presented approximately 29 witnesses including 10 expert witnesses, performed 7 site inspections in two countries, and introduced approximately 2,165 documents." Id.; see Pet. at 4.  The arbitral tribunal rendered the arbitration award ("Award") on September 8, 2009.  Pet. at 4.  The Award required that FHIS pay DRC $51,482,556.90, consisting of the following:

- $2,799,392.72 for invoices pending for work estimates, mobilization balance, differential for the exchange rate applied to the contract, contractual balance, and retention of 5%, plus interest of $2,639,212.24.

- $20,560,341.04 for costs incurred to perform additional work authorized and accepted but not paid for by FHIS, plus interest of $9,496,270.17.

- $0 for the cancellation of Contract IA.

- $8,210,451.23 for expenses incurred for the legal and technical defense against a civil lawsuit and criminal investigations stemming from FHIS's negligence in the administration of the contract, plus interest of $2,951,699.74.

- $0 for business value lost, including lost goodwill, commercial reputation, commercial name, etc.

- $0 for Moral Damages.

- $0 for Punitive Damages.

- $4,825,189.76 for legal costs, including attorneys' fees.

Pet. at 5.

Two months later, on November 11, 2009, DRC filed an action before the Honduran Supreme Court, requesting acknowledgment and execution of this Award.  See Opp. at 14; Mot. at 2; Mot., Urquiza Decl. Ex. 3 at 1, DRC's Petition for Acknowledgment Before the

Honduran Supreme Court, Nov. 11, 2009. FHIS opposed DRC's request, contending "that the subject arbitration award should not be enforced based on various grounds, including based on procedural irregularities, as being in contravention of Honduras law, and pursuant to various provisions of the applicable international arbitration treaty." Mot. at 2. On February 24, 2010, DRC filed a request in the Honduran case for "temporary suspension of the recognition and enforcement proceedings . . . . considering that efforts are being made with the competent authorities of the State of Honduras to seek an amicable settlement by mutual agreement that best suits the interest of both parties." Reply, Milla Decl. Ex. 2, DRC Temporary Suspension Request at 1, Feb. 24, 2010. FHIS filed a response, agreeing to a suspension of sixty days but asserting that after the conclusion of that time, DRC "must file the proceedings or make final withdrawal of the petition." Reply, Milla Aff. Ex. 3, FHIS Response to Temporary Suspension Request at 1, Apr. 26, 2010.

On April 30, 2010, the Honduran Supreme Court granted DRC's request and ordered a "temporary suspension of the present proceedings under the conditions and reservations made" by FHIS — which presumably includes the sixty-day limitation on the temporary suspension. Opp., Farmer Aff Ex. G, Order Granting Temporary Suspension Request at 1, Apr. 30, 2010. Therefore, after sixty days had passed, on July 2, 2010, FHIS submitted a request to the Honduran Supreme Court that it proceed to adjudicate the matter before it. Reply, Milla Decl. Ex. 5, FHS Petition for Continuation at 1-2, July 2, 2010. Thus, this foreign enforcement action is currently pending in Honduras.

Meanwhile, on January 5, 2010 — two months after DRC filed its foreign enforcement action but before DRC requested a temporary suspension of that action — DRC

filed a parallel petition in this Court.  See Pet. at 1.  DRC requests that this Court confirm the Award and contends that none of the grounds for refusal or deferral of recognition or enforcement apply.  Id. at 6.  In response, among other motions, the Republic has filed a motion to stay or, in the alternative, dismiss this action.  See generally Mot.

II.  LEGAL STANDARD

Actions to enforce foreign arbitration awards are governed either by the Inter-American Convention on International Commercial Arbitration ("Inter-American Convention" or "Panama Convention") or the Convention on Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention").  See INTER-AMERICAN CONVENTION, Jan. 30 1975, S. Treaty Doc. No. 97-12 (1981), 1438 U.N.T.S. 248; NEW YORK CONVENTION, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3.  Here, the parties agree that the Inter-American Convention applies.  See Pet. at 6; Mot. at 13-14 n.2; see also 9 U.S.C. § 305(1).  Both conventions, however, "'are intended to achieve the same results, and their key provisions adopt the same standards, phrased in the legal style appropriate for each organization.'"  Energy Transp., Ltd. v. M.S. San Sebastian, 348 F. Supp. 2d 186, 198 (S.D.N.Y. 2004) (quoting H.R. REP. NO. 501, 101ST CONG., 2D SESS 4 (1990), reprinted in 1990 U.S.C.C.A.N. 675, 678); see also International Ins. Co. v. Caja Nacional de Ahorro y Seguro, 293 F.3d 392, 396 n.9 (7th Cir. 2002) (noting that various provisions of both conventions "are substantively identical").  It is therefore expected that federal courts will achieve "'a general uniformity of results under the two conventions.'"  Energy Transp., Ltd. v. M.S. San Sebastian, 348 F. Supp. 2d at 198 (quoting H.R. REP. NO. 501, 101ST CONG., 2D SESS 4 (1990), reprinted in 1990 U.S.C.C.A.N. 675, 678).

Under 9 U.S.C. Section 207, a court "shall confirm" a foreign arbitration award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in" the Inter-American Convention. 9 U.S.C. § 207; see 9 U.S.C. § 302 (providing that "the Convention" referenced in 9 U.S.C. § 207 "shall mean the Inter-American Convention"). Under Article V(1) of the Inter-American Convention, such grounds include:

> a. That the parties to the agreement were subject to some incapacity under the applicable law or that the agreement is not valid under the law to which the parties have submitted it, or, if such law is not specified, under the law of the State in which the decision was made; or
>
> b. That the party against which the arbitral decision has been made was not duly notified of the appointment of the arbitrator or of the arbitration procedure to be followed, or was unable, for any other reasons, to present his defense; or
>
> c. That the decision concerns a dispute not envisaged in the agreement between the parties to submit to arbitration; nevertheless, if the provisions of the decision that refer to issues submitted to arbitration can be separated from those not submitted to arbitration, the former may be recognized and executed; or
>
> d. That the constitution of the arbitral tribunal or the arbitration procedure has not been carried out in accordance with the terms of the agreement signed by the parties or, in the absence of such agreement, that the constitution of the arbitral tribunal or the arbitration procedure has not been carried out in accordance with the law of the State where the arbitration took place; or
>
> e. That the decision is not yet binding on the parties or has been annulled or suspended by a competent authority of that State in which, or according to the law of which, the decision has been made.

INTER-AMERICAN CONVENTION, art. V(1). Article V(2) sets forth two additional grounds, providing that

>recognition and execution of an arbitral decision may also be refused if the competent authority of the State in which the recognition and execution is requested finds:
>
>a. That the subject of the dispute cannot be settled by arbitration under the law of that State; or
>
>b. That the recognition or execution of the decision would be contrary to the public policy . . . of that State.

INTER-AMERICAN CONVENTION, art. V(2).

Finally, Article VI of the Inter-American Convention provides a court with the discretion to "postpone a decision on the execution of the arbitral decision" if there is a pending action in the State in which, or according to the law of which, the arbitral award was made. INTER-AMERICAN CONVENTION, art. VI. In such case, Article VI further provides that a court may, "at the request of the party requesting execution, . . . instruct the other party to provide appropriate guaranties." Id.

## III.  DISCUSSION

Invoking Article VI of the Inter-American Convention, as well as this Court's inherent authority to control the disposition of its cases, the Republic of Honduras contends that this action should be stayed until after the final adjudication of three prior, pending actions: (1) the United States' FCA Action against DRC, currently pending before Judge Roberts; (2) DRC's action against USAID, Civil Action No. 04-940C, currently stayed in the Court of Federal Claims; and (3) DRC's foreign action to enforce the Award, currently pending before the Honduran Supreme Court. See Mot. at 2, 10; see also Pet. Opp. at 2. The Republic asserts that a stay will "foster judicial economy, avoid duplication of effort, promote judicial and the parties'

efficiency and justice, and prevent inconsistent judgments, which may be embarrassing to the United States' relations with Honduras." Mot. at 10.

More specifically, with respect to the FCA Action, the Republic argues that because the Award "is based on the same transactions and contract" at issue in the FCA Action, "[i]f the United States prevails, DRC would be held to have committed fraud in connection with the underlying transaction and contract which would be grounds to invalidate the award." Mot. at 2.[4] With respect to the relevant action in the Claims Court, the Republic argues that a stay is necessary "to avoid a double recovery." Id. at 3. Finally, with respect to DRC's foreign action to enforce the Award before the Honduran Supreme Court, the Republic argues: "The Honduras proceedings are prior in time and will adjudicate whether the arbitration award is enforceable against FHIS." Id. Thus, the Republic contends that "[t]here is a great danger of inconsistent judgments if this Court were to enforce the award against the Republic, and then [Judge Roberts] were to hold that DRC defrauded USAID and that the underlying agreement is void, and/or the Honduras courts were to hold that the award is unenforceable." Id.

DRC opposes the Republic's motion for stay. First, DRC argues that the matters raised in the FCA Action were addressed and rejected during the arbitration. Opp. at 16. Thus, DRC contends that the arbitration tribunal's rejection of any alleged fraud on DRC's part "is now final and binding." Id. Second, DRC argues that the action in the Claims Court "will not decide

---

[4] The United States has filed two statements of interest in this case in support of the Republic's position with respect to the FCA Action. The government asserts: "Because of the pendency of the FCA case and because DRC has pled the arbitration award as an affirmative defense to its alleged fraud, a resolution of this matter should await the outcome of the FCA case in both this Court as well as in the Court of Federal Claims." First U.S. Statement at 3; see also Second U.S. Statement at 2-3.

any issues that are relevant here." Id. at 18.  Finally, DRC argues that its action before the Honduran Supreme Court "has been suspended and might never result in a decision." Id. at 15.

The Court agrees with the Republic of Honduras that this action should be stayed in light of the pendency of the prior, parallel action currently before the Honduran Supreme Court, DRC, Inc. v. Fondo Hondureño de Inversión Social, Case No. 301-2009.[5]  Accordingly, under Article VI of the Inter-American Convention, the Court will exercise its discretion and will postpone ruling on DRC's petition.

This Court has previously set forth the framework for determining whether to postpone a decision to enforce an arbitration award pursuant to Article VI of the New York Convention.  See Continental Transfert Technique Ltd. v. Federal Gov't of Nigeria, 697 F. Supp. 2d 46, 59-60 (D.D.C. 2010).  That framework is equally applicable here given that the relevant text of Article VI of the Inter-American Convention is substantively identical to that of the New York Convention and that the two conventions "'are intended to achieve the same results.'" Energy Transp., Ltd. v. M.V. San Sebastian, 348 F. Supp. 2d at 198 (quoting H.R. REP. NO. 501, 101ST CONG., 2D SESS 4 (1990), reprinted in 1990 U.S.C.C.A.N. 675, 678); see also International Ins. Co. v. Caja Nacional de Ahorro y Seguro, 293 F.3d at 396 n.9.

Article VI of the Inter-American Convention gives the Court the discretion to decide whether an action should be postponed — that is, stayed or dismissed without prejudice. See Continental Transfert Technique Ltd. v. Federal Gov't of Nigeria, 697 F. Supp. 2d at 59. Although the United States Court of Appeals for the District of Columbia Circuit has not yet had

---

[5] The Court does not herein decide — and therefore reserves ruling on (should such ruling become necessary) — whether this action should also be stayed until after final adjudication of the FCA Action and the Claims Court action.

occasion to offer much guidance regarding the manner in which a district court should "postpone" a case brought under the Inter-American Convention, "the Second Circuit has addressed at length the issue of whether to adjourn a case to await the outcome of foreign proceedings." Id. (citing Europcar Italia, S.p.A. v. Maiellano Tours, Inc., 156 F.3d 310, 316 (2d Cir. 1998)). As this Court described:

> In considering the possibility of adjournment, a district court "must take into account the inherent tension between competing concerns." Europcar Italia, S.p.A. v. Maiellano Tours, Inc., 156 F.3d at 317. On the one hand, there is an "emphatic federal policy in favor of arbitral dispute resolution," Termorio S.A. E.S.P. v. Electranta S.P., 487 F.3d 928, 933 (D.C. Cir. 2007), and "the adjournment of enforcement proceedings impedes the goals of arbitration — the expeditious resolution of disputes and the avoidance of protracted and expensive litigation." Europcar Italia, S.p.A. v. Maiellano Tours, Inc., 156 F.3d at 317. On the other hand, "where a parallel proceeding is ongoing in the originating country and there is a possibility that the award will be set aside, a district court may be acting improvidently by enforcing the award prior to the completion of the foreign proceedings." Id.
>
> In light of the competing interests at stake when a district court is asked to consider adjournment, the Second Circuit suggests "several factors" that should be weighed by a court in determining whether to adjourn, including:
>
>> "(1) the general objectives of arbitration — the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;
>>
>> (2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;
>>
>> (3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;
>>
>> (4) the characteristics of the foreign proceedings, including (i) whether they were brought to enforce an award (which

13

>  would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement); (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award in federal court; and (iv) whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute;
>
>  (5) a balance of possible hardships to each of the parties . . . ; and
>
>  (6) any other [relevant] circumstances . . . ."
>
>  Europcar Italia, S.p.A. v. Maiellano Tours, Inc., 156 F.3d at 317-18.

Continental Transfert Technique Ltd. v. Federal Gov't of Nigeria, 697 F. Supp. 2d at 59-60 (alteration in original); see also Nedagro B.V. v. Zao Konversbank, Civil Action No. 02-3946, 2003 WL 151997, at *5-7 (S.D.N.Y. Jan. 21, 2003).

In this case, the Europcar Italia factors weigh in favor of a stay. The Award was rendered in the Republic of Honduras by Honduran arbitrators under Honduran law. Opp. at 8; Pet. Mem. at 6; Mot. at 13. On November 11, 2009, DRC filed a petition for acknowledgment and execution of the Award before the Honduran Supreme Court. See Opp. at 14; Mot. at 2; Mot., Urquiza Decl. Ex. 3, DRC's Petition for Acknowledgment Before the Honduran Supreme Court at 1, Nov. 11, 2009. Subsequently, on January 5, 2010, DRC brought a parallel action in this Court. The fourth factor therefore weighs strongly in favor of postponement given (1) that *DRC* brought the foreign proceeding to *enforce* the award as well as the parallel action in this Court, and (2) that DRC's action in Honduras was "initiated before the underlying enforcement proceeding" in this Court "so as to raise concerns of international comity." Europcar Italia,

14

S.p.A. v. Maiellano Tours, Inc., 156 F.3d at 318.  Compare Nedagro B.V. v. Zao Konversbank, 2003 WL 151997, at *7 (deferring decision on petition in light of the pendency of foreign enforcement proceedings because "it was petitioner who first sought to enforce its award in the originating country"), with G.E. Transp. S.P.A. v. Republic of Albania, 693 F. Supp. 2d 132, 139 (D.D.C. 2010) (confirming arbitration award after taking "notice of the fact that the foreign proceeding was commenced" by the foreign government "to set aside the Arbitral Award").  Therefore, where — as here — "it is the plaintiff who first sought to enforce his award in the originating country, the argument for enforcement by the plaintiff in the district court loses force because the possibility of conflicting results and the consequent offense to international comity can be laid at the plaintiff's door."  Europcar Italia, S.p.A. v. Maiellano Tours, Inc., 156 F.3d at 317.

DRC argues, however, that the foreign enforcement action before the Honduran Supreme Court "has been suspended and might never result in a decision," Opp. at 15.  Thus, according to DRC, "the status of the foreign proceedings and the estimated time for those proceedings to be resolved" weighs against postponement.  Europcar Italia, S.p.A. v. Maiellano Tours, Inc., 156 F.3d at 317.  The Court finds this argument unpersuasive for two reasons.  First, any delay with respect the foreign enforcement action must also "be laid at the plaintiff's door," Europcar Italia, S.p.A. v. Maiellano Tours, Inc., 156 F.3d at 317, because it was *DRC* that requested the suspension.  See Reply, Milla Decl. Ex. 2, DRC Temporary Suspension Request at 1, Feb. 24, 2010; see also Pet. Reply at 13.[6]  Second, on the record before it, the Court

---

[6] DRC has provided two contradictory explanations for requesting the temporary suspension.  In its filing before the Honduran Supreme Court, DRC asserted that its request was made in an attempt to resolve problems by mutual agreement of the parties.  See Reply, Milla

disagrees with DRC's characterization of the status of the foreign proceedings. DRC's request was for a "*temporary* suspension of the recognition and enforcement proceedings." Reply, Milla Decl. Ex. 2, DRC Temporary Suspension Request at 1, Feb. 24, 2010 (emphasis added). FHIS filed a response, agreeing to such a temporary suspension but asserting that it should terminate after sixty days. Reply, Milla Aff. Ex. 3, FHIS Response to Temporary Suspension Request at 1, Apr. 26, 2010. On April 30, 2010, the Honduran Supreme Court granted DRC's request and ordered a "*temporary* suspension of the present proceedings *under the conditions and reservations made*" by FHIS — which presumably includes the sixty-day limitation on the temporary suspension. Opp., Farmer Aff Ex. G, Order Granting Temporary Suspension Request at 1, Apr. 30, 2010 (emphasis added). Therefore, after sixty days had passed, on July 2, 2010, FHIS submitted a request to the Honduran Supreme Court that it proceed to adjudicate the matter before it. Reply, Milla Decl. Ex. 5, FHS Petition for Continuation at 1-2, July 2, 2010.

The Court therefore finds that it would be "acting improvidently by enforcing the award prior to the completion of the foreign proceedings" in Honduras. Europcar Italia S.p.A. v. Maiellano Tours, Inc., 156 F.3d at 317. Because DRC petitioned the Honduran Supreme Court

---

Decl. Ex. 2, DRC Temporary Suspension Request at 1, Feb. 24, 2010 (DRC requested the temporary suspension "considering that efforts are being made with the competent authorities of the State of Honduras to seek an amicable settlement by mutual agreement that best suits the interests of both parties"). In this Court, however, DRC asserts that its request was made to prevent unspecified Honduran officials from placing improper pressure on members of the Honduran Supreme Court. See Opp., Farmer Aff. ¶ 12, June 21, 2010 (DRC requested the temporary suspension because it received "information . . . considered to be reliable that members of the Honduran Government were attempting to influence the outcome of the Supreme Court action by putting improper pressure on members of the Supreme Court to rule against DRC.").

to recognize and enforce the Award issued in Honduras pursuant to Honduran law prior to initiating its action in this Court,

> it is better to permit the validity of this [Honduran] arbitral award to be first tested under [Honduran] law by [Honduran] courts. That is preferable to an American court seeking to apply the law of the foreign country where the award was made, and entering an order enforcing an award later condemned by the courts of that foreign country.

Spier v. Calzaturificio Tecnica S.p.A., 663 F. Supp. 871, 875 (S.D.N.Y. 1987); see also Nedagro B.V. v. Zao Konversbank, 2003 WL 151997, at *7 (deferring decision on a petition to confirm an arbitration award in light of the pendency of a parallel foreign action commenced by petitioner to confirm the award); Fertilizer Corp. of India v. IDI Mgmt., Inc., 517 F. Supp. 948, 961-62 (S.D. Ohio 1981). Accordingly, the Court will grant the Republic's motion to stay and will postpone ruling on DRC's petition in light of the pendency of the prior, parallel action before the Honduran Supreme Court, DRC, Inc. v. Fondo Hondureño de Inversión Social, Case No. 301-2009.

One final matter requires discussion. Article VI of the Inter-American Convention provides that the Court may, "at the request of the party requesting execution, . . . instruct the other party to provide appropriate guaranties." INTER-AMERICAN CONVENTION, art. VI. Invoking this provision of Article VI, DRC has requested a guaranty: "[I]f the Court postpones enforcement, DRC requests that the Republic be ordered to post appropriate guaranties, equal to the amount of the Award, plus interest." Pet. Reply at 13. The Court will not require the Republic of Honduras — a sovereign state that presumably is solvent and will comply with legitimate orders issued by courts in this country or in Honduras — to post any guaranty in this case.

## IV.  CONCLUSION

For the foregoing reasons, the Republic of Honduras' motion to stay [Dkt. No. 11] is GRANTED. An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

/s/
PAUL L. FRIEDMAN
DATE:  March 28, 2011                                     United States District Judge